ACCEPTED
04-15-00392-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/23/2015 4:06:24 PM
KEITH HOTTLE
CLERK

# 04–15–00392–CV

In the Court of Appeals

Fourth Court of Appeals District of Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

11/23/2015 4:06:24 PM

KEITH E. HOTTLE
Clerk

Appeal from the 73rd Judicial District Court
Bexar County, Texas
Trial Court No. 1998–CI–03821

Joyce Ann Sarro

v.

Michael A. Sarro

## Amended Brief for Appellant Joyce Ann Sarro

R. Robert Willmann, Jr.
Attorney at Law
P.O. Box 460167
San Antonio, Texas 78246
Tel 844.244.9973
Temporary Fax 361.552.4305
Bar No. 21655960
Attorney for Appellant

## Identity of Parties and Counsel

Joyce Ann Sarro
Was the respondent in the divorce and is the appellant on appeal.

John A. Mead
Attorney at Law
310 S. St. Mary's Street, Suite 1470
San Antonio, Texas 78205
Was the attorney for Joyce Ann Sarro for much of the case in the trial court.

R. Robert Willmann, Jr.
Attorney at Law
P.O. Box 460167
San Antonio, Texas 78246
Attorney on appeal for Joyce Ann Sarro.

Michael A. Sarro
Was the petitioner in the divorce and is the appellee in the appeal.

Rachel Sadovsky
Cordell and Cordell
10101 Reunion Place, Suite 250
San Antonio, Texas 78216
Attorney for appellee Michael A. Sarro; there were two or three other attorneys who represented Appellee in the trial court before Ms. Sadovsky.

# TABLE OF CONTENTS

Identity of Parties and Counsel ........................................................................ i

Table of Contents ........................................................................ ii

Index of Authorities ........................................................................ iii

References to the Record ........................................................................ 1

Statement of the Case ........................................................................ 3

Statement Regarding Oral Argument ........................................................................ 3

Issues Presented ........................................................................ 4

Statement of Facts ........................................................................ 4

Summary of Argument ........................................................................ 4

Argument ........................................................................ 5

Issue Number One ........................................................................ 5
Lack of record and new trial

Issue Number Two ........................................................................ 5
Motion for new trial and the lack of a record

Conclusion and Prayer ........................................................................ 10

Certificate of the Length of the Brief ........................................................................ 11

Certificate of Service ........................................................................ 11

Appendix ........................................................................ 12

A. Final Decree of Divorce in 2015

B. Order denying a new trial in 2015

C. First Decree of Divorce

D. Order granting a new trial on property

E. Judge's notes for briefing on the effective date of divorce

F. Letter on judge's determination of the effective date of divorce

G. Tex. R. App. P. 34.6 and 34.6(f)

# INDEX OF AUTHORITIES

## Cases

*Bauserman v. Unimax Express, Inc.,*
No. 14-06-00077-CV, 2006 Tex. App. Lexis 9347 (Tex. App.–Houston [14th Dist.]
October 26, 2006, no pet.) ............................................................... 8

*In the interest of K.R.M.,*
No. 11-11-00312-CV, 2012 Tex. App. LEXIS 2696 (Tex. App.–Eastland April 5, 2012,
no. pet.) .................................................................................... 8

*Smith v. Smith,*
143 S.W.3d 206 (Tex. App.–Waco 2004, no pet.) ......................................... 8

## Texas Rules of Appellate Procedure

Tex. R. App. P. 34.6 ................................................................... 9, 10
Tex. R. App. P. 34.6(f) ............................................................. 4, 5, 7, 8
Tex. R. App. P. 38.1 ...................................................................... 1

## Texas Rules of Civil Procedure

Tex. R. Civ. P. 320 ...................................................................... 9

**04–15–00392–CV**

In the Court of Appeals

Fourth Court of Appeals District of Texas

---

Appeal from the 73rd Judicial District Court
Bexar County, Texas
Trial Court No. 1998–CI–03821

---

Joyce Ann Sarro
v.
Michael A. Sarro

---

**Amended Brief for Joyce Ann Sarro**

---

Comes now appellant, Joyce Ann Sarro, and submits this amended brief regarding decisions of the trial court, pursuant to Tex. R. App. P. 38.1.

### References to the Record

The record consists of the clerk's record in one volume and two volumes of reporter's records.

A request for a supplemental clerk's record will be made because the Final Decree of Divorce signed on April 1, 2015 was not in the clerk's record (it is Appendix A), and the order granting a new trial on property division was also not in the clerk's record (it is Appendix D). Also, the request will include a letter describing a ruling of the trial court, which was admitted into evidence at the motion for new trial hearing and is Appendix F. RR NT 4, line 1 to line 13.

1

The record was filed electronically and the computer file in pdf format was received from the clerk with the following file name and the title appearing on the first page of the file, along with the number of pages of the pdf computer file itself.

- 04-15-00392-CV CLK Record 8-19-15.pdf

  Clerk's Record (354 pdf pages)

  Will be cited as CR [page] x, pdf [page] x.

The court reporter's records are:

- 04-15-00392-CV RPT Record 8-20-15.pdf

  Motion To Confirm Final Decree of Divorce (14 pdf pages)

  Will be cited as RR CFD [page] x.

- 04-15-00392-CV RPT Record 8-4-15.pdf

  Reporter's Record, Honorable Barbara Nellermoe By Telephone, June 11, 2015

  (14 pdf pages)

  Will be cited as RR NT [page] x.

The clerk's record will be referred to by CR for clerk's record, followed by the page number after CR, as the pages were numbered sequentially for the appeal beginning with a page number one in each volume, and the clerk put a page number in the lower left hand corner of each page where the documents began; the clerk's page number will be followed by the number of the pdf computer file, as they are different.

The reporter's records will be cited as RR CFD, for the transcript of the hearing on the Motion To Confirm the Final Decree of Divorce, and RR NT, for the hearing on the Motion for New Trial, followed by the page number and any line number.

The parties and witnesses may also be referred to by their given names, including first or last names.

## Statement of the Case

An Original Petition for Divorce was filed by appellee Michael Sarro. CR 1-12, pdf 162-173. This is a divorce case with one child who has a disability and an issue regarding the division of retirement and pension benefits. After a divorce decree was signed, Appendix C, a new trial was granted on property division of the marital estate. Appendix D. There were additional proceedings, including regarding support for an adult child with a disability. CR 71-89, pdf 232-250.

A trial on the merits occurred in 2004, and then the issue emerged about when the divorce was effective, whether it was at the time of the first divorce decree, before the partial new trial, or at the time of the subsequent trial resulting in a new decree of divorce.

After another hearing, briefing to the judge in the trial court was requested. Appendix E; CR 90, pdf 251. The divorce was determined to be effective at the time of the trial that occurred on August 17, 2004, after the new trial was ordered. Appendix F; CR 110, pdf 271.

This resulted in a new final decree of divorce that was signed on April 1, 2015. Appendix A.

After it was discovered that the court reporter's notes no longer existed from the 2004 trial, appellant Joyce Sarro filed a motion for new trial. CR 94, pdf 255. After a hearing the motion was denied. CR 326-327, pdf 487-488.

This appeal followed. CR 328-329, pdf 489-490.

## Statement Regarding Oral Argument

Since the court reporter's record of the trial on the merits cannot be prepared, and that issue is addressed in a rule of appellate procedure, the case appears to be straight-forward enough so that oral argument would not be especially helpful to the court. Therefore, Appellant is not requesting oral argument.

3

## Issues Presented

1. A record of the trial on the merits cannot be prepared because the original notes of the court reporter no longer exist; thus, appellant should have a new trial pursuant to Tex. R. App. P. 34.6(f), since the record is necessary to the resolution of an appeal regarding an unequal division of retirement and pension benefits and deferred compensation.

2. The trial court erred in not granting a new trial for good cause because the court reporter's notes were no longer available to prepare a record for an appeal, meaning that the unequal division of retirement benefits could not be reviewed on appeal.

## Statement of Facts

Appellee Michael Sarro filed an Original Petition for Divorce on March 11, 1998. CR 1, pdf 162. After a court appearance of July 17, 1998, a decree of divorce was signed on August 20, 1998. CR 13-41, pdf 174-202.

A motion for new trial was granted as to property on October 23, 1998. Appendix D.

An issue developed over when the divorce decree became effective, as there were two court proceedings that would result in a divorce decree. There was a hearing to decide that issue on April 4, 2014. RR CFD 4-13.

The motion for new trial and documents attached to Joyce Sarro's motion for new trial were admitted into evidence at the hearing on the motion for new trial. RR NT 4, line 1 to line 13. CR 94-110, pdf 255-271.

Additional documents and testimony that are facts relating to the appeal are in the record, and are referenced and cited under the arguments for the issues and points of error presented below, so they will not be duplicated here.

## Summary of the Argument

As is described in the argument below, and in the pleadings in the record, this case had a difficult procedural history. Ultimately, an issue became evident regarding the division

4

of retirement and pension and deferred compensation as a result of the determination in the trial court in 2014 that the date the divorce became effective was in 2004 rather than 1998. As such, this appealable issue required a record from the trial in 2004. However, the notes to transcribe what occurred at the trial are no longer available. Thus, the matter is presented under Tex. R. App. P. 34.6(f) that Appellant is entitled to a new trial, and the issue in dispute regarding property division is a particular and identifiable one.

## Argument

### Issue Number One

1. A record of the trial on the merits cannot be prepared because the original notes of the court reporter no longer exist; thus, appellant should have a new trial pursuant to Tex. R. App. P. 34.6(f), since the record is necessary to the resolution of an appeal regarding an unequal division of retirement and pension benefits and deferred compensation.

### Issue Number Two

2. The trial court erred in not granting a new trial for good cause because the court reporter's notes were no longer available to prepare a record for an appeal, meaning that the unequal division of retirement benefits could not be reviewed on appeal.

Through a series of unusual events in the procedural history of this case, including the granting of a partial new trial on property division, proceedings regarding support for a disabled child, several attorneys, and ambiguity about when the divorce was actually effective, the case was pending for quite a number of years.

The case stalled out over the question of when the divorce was effective; was it at the time of the first divorce proceeding on July 17, 1998, or at the time of the divorce trial on August 17, 2004? An issue emerged regarding the division of retirement and pension benefits as a result of the ambiguity over the effective date of the divorce and the granting of a partial new trial on the question of property division.

5

The question of when the divorce was effective was not resolved until 2014. A hearing was held on that issue on April 4, 2014. RR CFD 4-13. The parties were asked by the judge in the trial court to submit briefing on that question. RR CFD 11, line 3 to p. 13, line 8. CR 90, pdf 251; CR 107-108, pdf 268-269.

The court determined that the divorce was effective at the time of the last trial on the merits on August 17, 2004. CR 110, pdf 271. The parties were informed by letter that—

> As a trial court cannot sever property issues from a divorce action, once the new trial was granted that made the 1998 divorce decree interlocutory. The date of the divorce is August 17, 2004, which is the date that Judge Nellermoe heard the "final trial on merits of property issue" and reconfirmed all other terms of the decree. Judge Tanner requests that Mr. Mead prepare a final Decree of Divorce which indicates the August 17, 2004 date as the date of hearing and submit the decree to Ms. Sadovsky for approval as to form.

CR 110, pdf 271.

An original divorce decree was signed on August 20, 1998, reciting that the case was heard on July 17, 1998. CR 13-41, pdf 174-202.

The trial after the partial new trial was granted occurred on August 17, 2004. The divorce decree resulting from that trial and which is the subject of this appeal is dated April 1, 2015, resulting from Judge Tanner's ruling on when the divorce was effective.

From the splitting of the trials, and the additional court action over when the divorce became effective, the language of the present divorce decree makes an unequal division of pension and retirement benefits. On pages 28 and 29 of the divorce order, the division of pension and retirement benefits is set forth. On page 29 as to Joyce Sarro, it orders a 50% portion of retirement and deferred compensation plans of Michael Sarro to Joyce, "from June 6, 1993 until July 17, 1998", in each instance.

The parties were married on June 6, 1993. CR 2, pdf 163. The retirement and pension and deferred compensation plans were divided equally until the time of the first divorce

6

proceeding. However, after the partial new trial was granted on the issue of property, and the divorce was determined in 2014 to have been effective on August 17, 2004 rather than July 17, 1998, none of the retirement and pension benefits, and deferred compensation, was ordered for Joyce Sarro for the time period of July 17, 1998 to August 17, 2004. This has resulted in an unequal division of the marital estate as to those items of property which can be the subject of an appeal. However, the transcript of the trial starting on August 17, 2004 cannot be made into a record on appeal because the court reporter's notes are no longer available.

Joyce Sarro filed a motion for new trial in order to show that the court reporter could not make a record of the trial. At that hearing, the motion for new trial and its four exhibits were admitted into evidence. RR NT 4, line 1 to line 13. CR 94-111, pdf 255-272. The exhibits included a statement from the court reporter that the notes no longer existed; an affidavit from Joyce's attorney, John Mead, explaining some of the reasons why the procedural process in the case took as long as it did; the judge's notes requesting briefing on the issue of when the divorce was effective; and the letter describing the judge's ruling about the effective date of the divorce.

I.

Tex. R. App. P. 34.6(f) states:

Reporter's Record Lost or Destroyed. An appellant is entitled to a new trial under the following circumstances:

(1) if the appellant has timely requested a reporter's record;

(2) if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or—if the proceedings were electronically recorded—a significant portion of the recording has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, is necessary to the appeal's resolution; and

(4) if the lost, destroyed or inaudible portion of the reporter's record cannot be replaced by agreement of the parties, or the lost or destroyed exhibit cannot

7

be replaced either by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit.

A proper review of the division of pension and retirement benefits, and deferred compensation, requires the record from the trial. As is stated in *Smith v. Smith,* 143 S.W.3d 206, 214 (Tex. App.–Waco 2004, no pet.): "Although the court need not divide the community estate equally, a disproportionate division must be supported by some reasonable basis [citation omitted]. Having reviewed the record, we find no reasonable basis for the disproportionate division of community assets and the liabilities of the parties. Therefore, we sustain Karen's second issue." In *Smith,* there was a record to review, but the holding in the case indicated that the record must be examined in order to see if an unequal division of a marital estate is justified.

A record from a hearing was not available in a child support matter, *In the interest of K.R.M.,* No. 11-11-00312-CV, 2012 Tex. App. LEXIS 2696 (Tex. App.–Eastland April 5, 2012, no pet.). The court ruled that: "The reporter's record is necessary to the disposition of the OAG's third issue, which requires that we review the evidence presented at the hearing and determine whether the trial court abused its discretion in finding that the amount owed by Mitchell was zero. Because the reporter's record from the hearing is unavailable, we cannot reach the merits of the OAG's third issue. Thus, the reporter's record is necessary to the disposition of this appeal".

Some exhibits were not able to be located to be included in a reporter's record, in *Bauserman v. Unimax Express, Inc.,* No. 14-06-00077-CV, 2006 Tex. App. Lexis 9347 (Tex. App.–Houston [14th Dist.] October 26, 2006, no pet.). In that case, the appellants timely requested the record and paid for it on February 15, 2006, the District Clerk misplaced the exhibits, the missing exhibits were pertinent to the issue of financial damages and necessary for the appellants' appeal on the issue of damages, and the parties

were unable to agree on a complete reporter's record. They were entitled to a new trial. *Id.*

In the case at bar, in his affidavit admitted into evidence at the motion for new trial hearing, trial counsel for appellant Joyce Sarro described how he attempted to reach an agreement as to the terms of a final decree of divorce after the trial that began on August 17, 2004, and that Appellee was represented by three different attorneys during that time, and there was an ongoing issue and dispute about the date the divorce was actually effective. In both his affidavit and in the message from the court reporter admitted into evidence at the same hearing, it was established that the reporter's notes from the 2004 trial no longer existed. In April 2014 there was a hearing on determining the date the divorce was effective, and then the court's ruling was not announced until the letter of August 8, 2014. CR 107-110, pdf 268-271.

## II.

There is a hole in the law that can create, and does create, problems with the maintenance of notes and recordings from hearings and trials that may be necessary for an appeal. There is no requirement that a reporter's notes and other recordings be kept until a certain length of time after a final judgment is signed by a trial court judge.

Especially in jurisdictions with large populations and many cases pending and on the docket, a case may not be resolved within three years. Certainly there may be pretrial hearings that could have significance later on in the process of the case, or discovery matters and disputes that may need to be appealed, all after three years or so have gone by.

The unusual procedural history of this case—including additional actions regarding the parent-child relationship and a child becoming an adult with a disability—can result in an appealable issue for which a trial record is no longer obtainable.

Tex. R. App. P. 34.6 presents the issue of the lack of a reporter's record as one that is de novo. A motion for new trial under Tex. R. Civ. P. 320 in this instance was needed to

9

establish that the reporter's record was not going to be available, and arguably a new trial could be granted for good cause. A ruling on a motion for new trial is usually reviewed for an abuse of discretion. The more specific and controlling rule in this regard is Tex. R. App. P. 34.6.

Based on the procedural history of the case and the existing record, it is appropriate that a new trial be granted. Since the issue from the perspective of the Appellant concerns the division of retirement and pension and deferred compensation plans, it is highly likely that any other issues that would exist in the event of a new trial would be agreed to or would be the subject of stipulations, making a new trial uncomplicated and clean.

### Conclusion and Prayer

Therefore, Joyce Ann Sarro prays that this brief be filed; that the cause be submitted; that this court reverse the Final Decree of Divorce signed on April 1, 2015; that the case be remanded to the trial court for a new trial; that all costs be taxed against Appellee; and that she have such other relief, in law or equity, to which she may be justly entitled.

Respectfully Submitted,

/s/ R. Robert Willmann, Jr.

R. Robert Willmann, Jr.
Attorney at Law
P.O. Box 460167
San Antonio, Texas 78246
Tel 844.244.9973
Temporary Fax 361.552.4305
Bar No. 21655960
willaw@prismnet.com
Attorney for Joyce Ann Sarro

10

**Certificate About the Length of the Brief**

The undersigned used a text processing program called T<sub>E</sub>X, which is not a word processor. The writer types in the instructions for formatting the paper interspersed in the text, and so a word count is not easily determined; there will be more words in a word count than actual words in the final document. A plain text file is created which is then processed by the computer program into a device independent file, which can then be converted into a Postscript or pdf file. However, the brief is presented well within the 50 page limit.

**Certificate of Service**

I certify that this brief was served by–

an electronic filing service or, if applicable, by certified mail, return receipt requested, to Rachel Sadovsky; Cordell and Cordell; 10101 Reunion Place, Suite 250; San Antonio, Texas 78216 (rsadovsky@cordelllaw.com) (attorney for appellee Michael A. Sarro);

on the 23rd day of November, 2015.


/s/ R. Robert Willmann, Jr.

——————————————————

R. Robert Willmann, Jr.

# Appendix

A. Final Decree of Divorce in 2015

B. Order denying a new trial in 2015

C. First Decree of Divorce

D. Order granting a new trial on property

E. Judge's notes for briefing on the effective date of divorce

F. Letter on judge's determination of the effective date of divorce

G. Tex. R. App. P. 34.6 and 34.6(f)

# Appendix A



1998CI03821 -D073

## NO. 1998-CI-03821

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF | §<br>§<br>§ | IN THE DISTRICT COURT |
| MICHAEL A. SARRO<br>AND<br>JOYCE ANN SARRO | §<br>§<br>§<br>§ | 73RD JUDICIAL DISTRICT |
| AND IN THE INTEREST OF<br>MICHAEL ANDREW SARRO, A<br>CHILD | §<br>§<br>§ | BEXAR COUNTY, TEXAS |

## FINAL DECREE OF DIVORCE

On August 17, 2004 the Court heard this case.

*1.*    *Appearances*

Petitioner, Michael A. Sarro, appeared in person and through Attorney of Record, Charles Montemayor and announced ready for trial. However, at the time of the entry of this Order, Petitioner Michael A. Sarro, appeared in person and through Attorney of Record, Rachel S. Sadovsky.

Respondent, Joyce Ann Sarro, appeared in person and through Attorney of Record, John A. Mead, and announced ready for trial.

*2.*    *Proceedings*

A Final Decree of Divorce in this cause was judicially pronounced and rendered in Court at San Antonio, Bexar County, Texas on July 17, 1998. Subsequently a new trial was granted as to the issue of property. In later proceedings the Court clarified its ruling and a new trial was granted in its entirety; however the parties stipulated that the terms regarding conservatorship, possession and support of the children would not be set aside and would be incorporated in this decree. The parties went to hearing on the issues of property on August 17, 2004.

3.    *Record*

The record of testimony was duly reported by the Court Reporter, Terri Thomas, for the 45th Judicial District Court.

4.    *Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed. The Court finds that, at the time this suit was filed, Petitioner had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

5.    *Jury*

A jury was waived, and all questions of fact and of law were submitted to the Court.

6.    *Divorce*

IT IS ORDERED AND DECREED that Michael A. Sarro, Petitioner, and Joyce Ann Sarro, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

7.    *Child of the Marriage*

The Court finds that Petitioner and Respondent are the parents of the following child:

Name: MICHAEL ANDREW SARRO
Sex:    Male
Birthplace:    San Antonio, Texas
Birth date:    June 23, 1994
Home state:    Texas

Final Decree of Divorce - Page 2

The Court finds no other children of the marriage are expected.

*8.    Conservatorship and Support*

The Court, having considered the circumstances of the parents and of the child, finds that the following orders are in the best interest of the child.

IT IS ORDERED that Michael A. Sarro and Joyce Ann Sarro are appointed parent joint managing conservators of the following child: MICHAEL ANDREW SARRO.

IT IS ORDERED that, at all times, Joyce Ann Sarro, as a parent joint managing conservator, shall have the following rights:

1.    the right to receive information from the other parent concerning the health, education, and welfare of the child;

2.    the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the child;

3.    the right of access to medical, dental, psychological, and educational records of the child;

4.    the right to consult with a physician, dentist, or psychologist of the child;

5.    the right to consult with school officials concerning the child's welfare and educational status, including school activities;

6.    concerning the child's education, this right is subject to the agreement of the other parent conservator;

7.    the right to attend school activities;

8.    the right to be designated on the child's records as a person to be notified in case of an emergency;

9.    the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the child; and

10.   the right to manage the estate of the child to the extent the estate has been created by the parent or the parent's family.

Final Decree of Divorce - Page 3

IT IS ORDERED that, at all times, Michael A. Sarro, as a parent joint managing conservator, shall have the following rights:

1.  the right to receive information from the other parent concerning the health, education, and welfare of the child;

2.  the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the child;

3.  the right of access to medical, dental, psychological, and educational records of the child;

4.  the right to consult with a physician, dentist, or psychologist of the child;

5.  the right to consult with school officials concerning the child's welfare and educational status, including school activities;

6.  the right to attend school activities;

7.  concerning the child's education, this right is subject to the agreement of the other parent conservator;

8.  the right to be designated on the child's records as a person to be notified in case of an emergency;

9.  the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the child; and

10. the right to manage the estate of the child to the extent the estate has been created by the parent or the parent's family.

IT IS ORDERED that, at all times, Michael A. Sarro and Joyce Ann Sarro, as parent joint managing conservators, shall each have the following duties:

1.  the duty to inform the other conservator of the child in a timely manner of significant information concerning the health, education, and welfare of the child; and

2.  the duty to inform the other conservator of the child if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that this information shall be tendered in the form of a notice made as soon as practicable, but

Final Decree of Divorce - Page 4

not later than the fortieth day after the date the conservator of the child begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged. WARNING: A PERSON COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE PERSON FAILS TO PROVIDE THIS NOTICE.

IT IS ORDERED that, during her respective periods of possession, Joyce Ann Sarro, as a parent joint managing conservator, shall have the following rights and duties:

1. the duty of care, control, protection, and reasonable discipline of the child;

2. the duty to support the child, including providing the child with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3. the right to consent for the child to medical and dental care not involving an invasive procedure;

4. the right to consent for the child to medical, dental, and surgical treatment during an emergency involving immediate danger to the health and safety of the child; and,

5. the right to direct the moral and religious training of the child.

IT IS ORDERED that, during his respective periods of possession, Michael A. Sarro, as a parent joint managing conservator, shall have the following rights and duties:

1. the duty of care, control, protection, and reasonable discipline of the child;

2. the duty to support the child, including providing the child with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3. the right to consent for the child to medical and dental care not involving an invasive procedure;

4. the right to consent for the child to medical, dental, and surgical treatment during an emergency involving immediate danger to the health and safety of the child; and,

5. the right to direct the moral and religious training of the child.

IT IS ORDERED that Joyce Ann Sarro, as a parent joint managing conservator, shall have

the following rights and duty:

1. the exclusive right to designate the primary residence of the child with the following counties: Bexar, Bandera, Medina, Atascosa, or Comal County, Texas;

2. the independent right to consent to medical, dental, and surgical treatment involving invasive procedures and to consent to psychiatric and psychological treatment of the child;

3. the exclusive right to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child;

4. the independent right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

5. the independent right to consent to marriage and to enlistment in the armed forces of the United States;

6. the right to make decisions concerning the child's education subject to the agreement of the other parent conservator, except as otherwise ordered herein by the court;

7. except as provided by section 264.0111 of the Texas Family Code, the exclusive right to the services and earnings of the child;

8. except when a guardian of the child's estate or a guardian or attorney ad litem has been appointed for the child, the independent right to act as an agent of the child in relation to the child's estate if the child's action is required by a state, the United States, or a foreign government; and

9. the independent duty to manage the estate of the child to the extent the estate has been created by community property or the joint property of the parents.

IT IS ORDERED that Michael A. Sarro, as a parent joint managing conservator, shall have

the following rights and duty:

1. the independent right to consent to medical, dental, and surgical treatment involving invasive procedures and to consent to psychiatric and psychological treatment of the child;

2. the exclusive right to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child;

3. the independent right to represent the child in legal action and to make other

decisions of substantial legal significance concerning the child;

4.      the independent right to consent to marriage and to enlistment in the armed forces of the United States;

5.      the right to make decisions concerning the child's education subject to the agreement of the other parent conservator, except as otherwise ordered herein by the court;

6.      except as provided by section 264.0111 of the Texas Family Code, the exclusive right to the services and earnings of the child;

7.      except when a guardian of the child's estate or a guardian or attorney ad litem has been appointed for the child, the independent right to act as an agent of the child in relation to the child's estate if the child's action is required by a state, the United States, or a foreign government; and

8.      the independent duty to manage the estate of the child to the extent the estate has been created by community property or the joint property of the parents.

## *Education*

IT IS ORDERED that the child shall not be educated at home by Respondent, unless otherwise ordered by the court.

## *Geographical Area for Primary Residence*

ITS IS ORDERED that the primary residence of the child shall be within Bexar, Bandera, Medina, Atascosa or Comal County, Tx. The parties shall not remove the child from within Bexar, Bandera, Medina, Atascosa or Comal County, Tx for the purpose of changing the primary residence of the child until modified by further order of the court of continuing jurisdiction or b written agreement signed by the parties and filed with the court. IT IS FURTHERED ORDERED that Joyce Ann Sarro shall have the exclusive right to establish the child's primary residence within Bexar, Bandera, Medina, Atascosa or Comal County, Tx.

1.      Standard Possession Order

The Court finds that the following provisions of this Standard Possession Order are intended to and do comply with the requirements of Texas Family Code sections 153.311 through 153.317. IT IS ORDERED that each conservator shall comply with all terms and conditions of this Standard Possession Order. IT IS ORDERED that this Standard Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this Standard Possession Order. IT IS, THEREFORE, ORDERED:

(a)     Definitions

1.     In this Standard Possession Order "school" means the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides.

2.     In this Standard Possession Order "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

(b)     Mutual Agreement or Specified Terms for Possession

IT IS ORDERED that the conservators shall have possession of the child at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is ORDERED that the conservators shall have possession of the child under the specified terms set out in this Standard Possession Order.

(c)     Parents Who Reside 100 Miles or Less Apart

Except as otherwise explicitly provided in this Standard Possession Order, when Michael A. Sarro resides 100 miles or less from the primary residence of the child, Michael A. Sarro shall have the right to possession of the child as follows:

1.     Weekends - On weekends, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

2.     Weekend Possession Extended by a Holiday - Except as otherwise explicitly provided in this Standard Possession Order, if a weekend period of possession by Michael A. Sarro begins on a Friday that is a school holiday during the regular school term or a federal, state, or local holiday during the summer months when school is not in session, or if the period ends on or is immediately followed by a Monday that is such a holiday, that weekend period of possession shall begin at 6:00 p.m. on the Thursday immediately preceding the Friday holiday or school holiday or end at 6:00 p.m. on that Monday holiday or school holiday, as applicable.

3.     Wednesdays - On Wednesday of each week during the regular school term,

Final Decree of Divorce - Page 8

beginning at 6:00 p.m. and ending at 8:00 p.m.

4.     Spring Break in Even-Numbered Years - In even-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

5.     Extended Summer Possession by Michael A. Sarro -

With Written Notice by May 1 - If Michael A. Sarro gives Joyce Ann Sarro written notice by May 1 of a year specifying an extended period or periods of summer possession for that year, Michael A. Sarro shall have possession of the child for thirty days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, as specified in the written notice. These periods of possession shall begin and end at 6:00 p.m.

Without Written Notice by May 1 - If Michael A. Sarro does not give Joyce Ann Sarro written notice by May 1 of a year specifying an extended period or periods of summer possession for that year, Michael A. Sarro shall have possession of the child for thirty consecutive days in that year beginning at 6:00 p.m. on July 1 and ending at 6:00 p.m. on July 31.

Notwithstanding the weekend and Wednesday periods of possession ORDERED for Michael A. Sarro, it is explicitly ORDERED that Joyce Ann Sarro shall have a superior right of possession of the child as follows:

1.     Spring Break in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

2.     Summer Weekend Possession by Joyce Ann Sarro - If Joyce Ann Sarro gives Michael A. Sarro written notice by June 1 of a year, Joyce Ann Sarro shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of the extended summer possession by Michael A. Sarro in that year, provided that Joyce Ann Sarro picks up the child from Michael A. Sarro and returns the child to that same place and that the weekend so designated does not interfere with Father's Day Weekend.

3.     Extended Summer Possession by Joyce Ann Sarro - If Joyce Ann Sarro gives Michael A. Sarro written notice by May 15 of a year or gives Michael A. Sarro fourteen days' written notice on or after May 16 of a year, Joyce Ann Sarro may designate one weekend beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer

vacation, during which an otherwise scheduled weekend period of possession by Michael A. Sarro shall not take place in that year, provided that the weekend so designated does not interfere with Michael A. Sarro's period or periods of extended summer possession or with Father's Day Weekend.

(d)    Parents Who Reside More Than 100 Miles Apart

Except as otherwise explicitly provided in this Standard Possession Order, when Michael A. Sarro resides more than 100 miles from the residence of the child, Michael A. Sarro shall have the right to possession of the child as follows:

1.    Weekends - Unless Michael A. Sarro elects the alternative period of weekend possession described in the next paragraph, Michael A. Sarro shall have the right to possession of the child on weekends, beginning at 6:00 p.m. on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday. Except as otherwise explicitly provided in this Standard Possession Order, if such a weekend period of possession by Michael A. Sarro begins on a Friday that is a school holiday during the regular school term or a federal, state, or local holiday during the summer months when school is not in session, or if the period ends on or is immediately followed by a Monday that is such a holiday, that weekend period of possession shall begin at 6:00 p.m. on the Thursday immediately preceding the Friday holiday or school holiday or end at 6:00 p.m. on that Monday holiday or school holiday, as applicable.

Alternate Weekend Possession - In lieu of the weekend possession described in the foregoing paragraph, Michael A. Sarro shall have the right to possession of the child not more than one weekend per month of Michael A. Sarro's choice beginning at 6:00 p.m. on the day school recesses for the weekend and ending at 6:00 p.m. on the day before school resumes after the weekend. Except as otherwise explicitly provided in this Standard Possession Order, if such a weekend period of possession by Michael A. Sarro begins on a Friday that is a school holiday during the regular school term or a federal, state, or local holiday during the summer months when school is not in session, or if the period ends on or is immediately followed by a Monday that is such a holiday, that weekend period of possession shall begin at 6:00 p.m. on the Thursday immediately preceding the Friday holiday or school holiday or end at 6:00 p.m. on that Monday holiday or school holiday, as applicable. Michael A. Sarro may elect an option for this alternative period of weekend possession by giving written notice to Joyce Ann Sarro within ninety days after the parties begin to reside more than 100 miles apart. If Michael A. Sarro makes this election, Michael A. Sarro shall give Joyce Ann Sarro fourteen days' written or telephonic notice preceding a designated weekend. The weekends chosen shall not conflict with the provisions regarding Christmas, Thanksgiving, the child's birthday, and Mother's Day Weekend below.

2.    Spring Break in All Years - Every year, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

Final Decree of Divorce - Page 10

3.      Extended Summer Possession by Michael A. Sarro -

With Written Notice by May 1 - If Michael A. Sarro gives Joyce Ann Sarro written notice by May 1 of a year specifying an extended period or periods of summer possession for that year, Michael A. Sarro shall have possession of the child for forty-two days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, as specified in the written notice. These periods of possession shall begin and end at 6:00 p.m.

Without Written Notice by May 1 - If Michael A. Sarro does not give Joyce Ann Sarro written notice by May 1 of a year specifying an extended period or periods of summer possession for that year, Michael A. Sarro shall have possession of the child for forty-two consecutive days in that year beginning at 6:00 p.m. on June 1 and ending at 6:00 p.m. on July 27 of that year.

Notwithstanding the weekend periods of possession ORDERED for Michael A. Sarro, it is explicitly ORDERED that Joyce Ann Sarro shall have a superior right of possession of the child as follows:

1.      Summer Weekend Possession by Joyce Ann Sarro - If Joyce Ann Sarro gives Michael A. Sarro written notice by June 1 of a year, Joyce Ann Sarro shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of possession by Michael A. Sarro during Michael A. Sarro's extended summer possession in that year, provided that if a period of possession by Michael A. Sarro in that year exceeds thirty days, Joyce Ann Sarro may have possession of the child under the terms of this provision on any two-nonconsecutive weekends during that period and provided that Joyce Ann Sarro picks up the child from Michael A. Sarro and returns the child to that same place and that the weekend so designated does not interfere with Father's Day Weekend.

2.      Extended Summer Possession by Joyce Ann Sarro - If Joyce Ann Sarro gives Michael A. Sarro written notice by June 1 of a year, Joyce Ann Sarro may designate twenty-one days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, during which Michael A. Sarro shall not have possession of the child, provided that the period or periods so designated do not interfere with Michael A. Sarro's period or periods of extended summer possession or with Father's Day Weekend.

(e)     Holidays Unaffected by Distance

Notwithstanding the weekend and Wednesday periods of possession of Michael A. Sarro,

Final Decree of Divorce - Page 11

Joyce Ann Sarro and Michael A. Sarro shall have the right to possession of the child as follows:

1. Christmas Holidays in Even-Numbered Years - In even-numbered years, Michael A. Sarro shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 26, and Joyce Ann Sarro shall have the right to possession of the child beginning at noon on December 26 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

2. Christmas Holidays in Odd-Numbered Years - In odd-numbered years, Joyce Ann Sarro shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 26, and Michael A. Sarro shall have the right to possession of the child beginning at noon on December 26 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

3. Thanksgiving in Odd-Numbered Years - In odd-numbered years, Michael A. Sarro shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

4. Thanksgiving in Even-Numbered Years - In even-numbered years, Joyce Ann Sarro shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

5. Child's Birthday - If a parent is not otherwise entitled under this Standard Possession Order to present possession of the child on the child's birthday, the parent shall have possession of the child beginning at 6:00 p.m. and ending at 8:00 p.m. on that day,

provided that that parent picks up the child from the other parent's residence and returns the child to that same place.

6. Father's Day Weekend - Michael A. Sarro shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Father's Day and ending at 6:00 p.m. on Father's Day, provided that if Michael A. Sarro is not otherwise entitled under this Standard Possession Order to present possession of the child, he shall pick up the child from Joyce Ann Sarro's residence and return the child to that same place.

7. Mother's Day Weekend - Joyce Ann Sarro shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending at 6:00 p.m. on Mother's Day, provided that if Joyce Ann Sarro is not otherwise entitled under this Standard Possession Order to present possession of the child, she shall

Final Decree of Divorce - Page 12

pick up the child from Michael A. Sarro's residence and return the child to that same place.

(f)     Undesignated Periods of Possession

Joyce Ann Sarro shall have the right of possession of the child at all other times not specifically designated in this Standard Possession Order for Michael A. Sarro.

(g)     General Terms and Conditions

Except as otherwise explicitly provided in this Standard Possession Order, the terms and conditions of possession of the child that apply regardless of the distance between the residence of a parent and the child are as follows:

1.     Surrender of Child by Joyce Ann Sarro - Joyce Ann Sarro is ORDERED to surrender the child to Michael A. Sarro at the beginning of each period of Michael A. Sarro's possession at the residence of Joyce Ann Sarro.

2.     Return of Child by Michael A. Sarro - Michael A. Sarro is ORDERED to return the child to the residence of Joyce Ann Sarro at the end of each period of possession. However, it is ORDERED that, if Joyce Ann Sarro and Michael A. Sarro live in the same county at the time of rendition of this order, Michael A. Sarro's county of residence remains the same after rendition of this order, and Joyce Ann Sarro's county of residence changes, effective on the date of the change of residence by Joyce Ann Sarro, Michael A. Sarro shall surrender the child to Joyce Ann Sarro at the residence of Michael A. Sarro at the end of each period of possession.

3.     Surrender of Child by Michael A. Sarro - Michael A. Sarro is ORDERED to surrender the child to Joyce Ann Sarro, if the child is in Michael A. Sarro's possession or subject to Michael A. Sarro's control, at the beginning of each period of Joyce Ann Sarro's exclusive periods of possession, at the place designated in this Standard Possession Order.

4.     Return of Child by Joyce Ann Sarro - Joyce Ann Sarro is ORDERED to return the child to Michael A. Sarro, if Michael A. Sarro is entitled to possession of the child, at the end of each of Joyce Ann Sarro's exclusive periods of possession, at the place designated in this Standard Possession Order.

5.     Personal Effects - Each conservator is ORDERED to return with the child the personal effects that the child brought at the beginning of the period of possession.

6.     Designation of Competent Adult - Each conservator may designate any competent adult to pick up and return the child, as applicable. IT IS ORDERED that a conservator or a designated competent adult be present when the child is picked up or returned.

Final Decree of Divorce - Page 13

7.      Inability to Exercise Possession - Each conservator is ORDERED to give notice to the person in possession of the child on each occasion that the conservator will be unable to exercise that conservator's right of possession for any specified period.

8.      Written Notice - Written notice shall be deemed to have been timely made if received or postmarked before or at the time that notice is due.

This concludes the Standard Possession Order.

2.      Duration

The periods of possession ordered above apply to the child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

3.      Termination of Orders

The provisions of this decree relating to conservatorship, possession, or access terminate on the remarriage of Michael A. Sarro to Joyce Ann Sarro unless a nonparent or agency has been appointed conservator of the child under chapter 153 of the Texas Family Code.

4.      Notice to Peace Officers

**NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE**

**PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.**

*Child Support*

IT IS ORDERED that Michael A. Sarro is obligated to pay and shall pay to Joyce Ann Sarro child support of $491.79 per month, with the first payment being due and payable on August 1, 1998 and a like payment being due and payable on the 1st day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1.    the child reaches the age of eighteen years, provided that the periodic child support payments shall continue to be due and paid until the end of the month in which the child graduates from high school if the child is:

a.    enrolled:

1)    under Chapter 25, Education Code, in an accredited secondary school in a program leading toward a high school diploma, the periodic child support payments shall continue to be due and paid until the end of the month in which the child graduates from high school;

2)    under Section 130.008, Education Code, in courses for joint high school and junior college credit; or

3)    on a full-time basis in a private secondary school in a program leading toward a high school diploma; and

b.    complying with:

1)    the minimum attendance requirements of Subchapter C, Chapter 25, Education Code; or

2)    the minimum attendance requirements imposed by that school in which the child is enrolled, if the child is enrolled in a private secondary school;

2.    the child marries;

3.    the child dies; or

4.      the child's disabilities are otherwise removed for general purposes.

Withholding from Earnings.

IT IS ORDERED that any employer of Michael A. Sarro shall be ordered to withhold from earnings for child support from the disposable earnings of Michael A. Sarro for the support of MICHAEL ANDREW SARRO.

IT IS FURTHER ORDERED that all amounts withheld from the disposable earnings of Michael A. Sarro by the employer and paid in accordance with the order to that employer shall constitute a credit against the child support obligation. Payment of the full amount of child support ordered paid by this decree through the means of withholding from earnings shall discharge the child support obligation. If the amount withheld from earnings and credited against the child support obligation is less than 100 percent of the amount ordered to be paid by this decree, the balance due remains an obligation of Michael A. Sarro, and it is hereby ORDERED that Michael A. Sarro pay the balance due directly to the state disbursement unit specified below.

On this date the Court signed an Order/Notice to Withhold Income for Child Support.

Payment

IT IS ORDERED that all payments shall be made through the Texas Child Support Disbursement Unit at P.O. Box 659791, San Antonio, Texas 78265-9791, and thereafter promptly remitted to Joyce Ann Sarro for the support of the child. IT IS ORDERED that each party shall pay, when due, all fees charged to that party by the agency through which child support is paid.

Change of Employment

IT IS FURTHER ORDERED that Michael A. Sarro shall notify this Court and Joyce Ann Sarro by U.S. certified mail, return receipt requested, of any change of address and of any

Final Decree of Divorce - Page 16

termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of Michael A. Sarro and the name and address of his current employer, whenever that information becomes available.

### Clerk's Duties

IT IS ORDERED that, on the request of a prosecuting attorney, the title IV-D agency, the friend of the Court, a domestic relations office, Joyce Ann Sarro, Michael A. Sarro, or an attorney representing Joyce Ann Sarro or Michael A. Sarro, the clerk of this Court shall cause a certified copy of the Order/Notice to Withhold Income for Child Support to be delivered to any employer.

### Health Care.

IT IS ORDERED that medical support shall be provided for the child as follows:

1. Michael A. Sarro's Responsibility - It is the intent and purpose of this decree that Michael A. Sarro shall, at all times, provide medical support for the child as additional child support. IT IS THEREFORE ORDERED that, as additional child support, Michael A. Sarro shall provide medical support for the child, for as long as child support is payable under the terms of this decree, as set out herein.

2. Definition - "Health insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, and may be provided in the form of an indemnity insurance contract or plan, a preferred provider organization or plan, a health maintenance organization, or any combination thereof.

"Reasonable cost" means the cost of a health insurance premium that does not exceed 10 percent of the responsible parent's net income in a month.

3.      Insurance through Michael A. Sarro's Employment, Union, Trade Association, or Other Organization - The Court finds that the child is currently enrolled as a beneficiary of a health insurance plan provided through Michael A. Sarro's employment or membership in a union, trade association, or other organization at a reasonable cost. IT IS ORDERED that Michael A. Sarro shall, at his sole cost and expense, keep and maintain at all times in full force and effect the same or equivalent health insurance coverage that insures the child through Michael A. Sarro's employer, union, trade association, or other organization as issued by VIA Metropolitan Transit for as long as it is offered by his employer, union, trade association, or other organization. If his employer, union, trade association, or other organization subsequently changes health insurance benefits or carriers, Michael A. Sarro is ORDERED to obtain and maintain coverage for the benefit of the child on the successor company or through such health insurance plan as is available through other employment, union, trade association, or other organization or other insurance provider.

Insurance through Joyce Ann Sarro's Employment, Union, Trade Association, or Other Organization - If health insurance for the child ceases to be available through Michael A. Sarro's employer, union, trade association, or other organization but is available at a reasonable cost through Joyce Ann Sarro's employer, or other organization, Joyce Ann Sarro is ORDERED to have the child covered on her health insurance and Michael A. Sarro is ORDERED to pay Joyce Ann Sarro at her last known address the costs of insuring the child on Joyce Ann Sarro's health insurance plan, beginning on the first day of the month following the date Michael A. Sarro first receives written notice of the amount of the premium from Joyce Ann Sarro. Accompanying the first such written

notification and any subsequent notifications informing of a change in the premium amount, Joyce Ann Sarro is ORDERED to provide Michael A. Sarro with documentation from her employer, union, trade association, or other organization of the cost to Joyce Ann Sarro of providing coverage for the child.

4.      Claim Forms - Except as provided in paragraph 6 below, the party who is not carrying the health insurance policy covering the child is ORDERED to submit to the party carrying the policy, within ten days of receiving them, any and all forms, receipts, bills, and statements reflecting the health-care expenses the party not carrying the policy incurs on behalf of the child.

The party who is carrying the health insurance policy covering the child is ORDERED to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of the child to the insurance carrier within ten days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

5.      Constructive Trust for Payments Received - IT IS ORDERED that any insurance payments received by the party from the health insurance carrier as reimbursement for health-care expenses incurred by or on behalf of the child shall belong to the party who incurred and paid those expenses. IT IS FURTHER ORDERED that the party receiving the insurance payments is designated a constructive trustee to receive any insurance checks or payments for health-care expenses incurred and paid by the other party, and the party carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits, to the other party within three days of receiving them.

6.      Filing by Party Not Carrying Insurance - In accordance with article 3.51-13 of the Texas Insurance Code, IT IS ORDERED that the party who is not carrying the health insurance

Final Decree of Divorce - Page 19

policy covering the child may, at that party's option, file directly with the insurance carrier with whom coverage is provided for the benefit of the child any claims for health-care expenses, including, but not limited to, medical, hospitalization, and dental costs and receive payments directly from the insurance company.

7.      Secondary Coverage - IT IS ORDERED that nothing in this decree shall prevent either party from providing secondary health insurance coverage for the child at that party's sole cost and expense.  IT IS FURTHER ORDERED that if a party provides secondary health insurance coverage for the child, both parties shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the child and to ensure that the party who pays for health-care expenses for the child is reimbursed for the payment from both carriers to the fullest extent possible.

8.      Compliance with Insurance Company Requirements - Each party is ORDERED to conform to all requirements imposed by the terms and conditions of the policy of health insurance covering the child in order to assure maximum reimbursement or direct payment by the insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to carrier, second opinions, and the like. Each party is ORDERED to attempt to use "preferred providers," or services within the health maintenance organization, if applicable; however, this provision shall not apply if emergency care is required.  Disallowance of the bill by a health insurer shall not excuse the obligation of either party to make payment; however, if a bill is disallowed or the benefit reduced due to the failure of a party to follow procedures or requirements of the carrier, IT IS ORDERED that the party failing to follow the carrier's procedures or requirements shall be wholly responsible for the increased portion of that bill.

Final Decree of Divorce - Page 20

If health insurance coverage for the child is provided through a health maintenance organization (HMO) or preferred provider organization (PPO), the parties are ORDERED to use health-care providers who are employed by the HMO or approved by the PPO whenever feasible. If health-care expenses are incurred by using that HMO or PPO plan, Michael A. Sarro is ORDERED to pay 50 percent and Joyce Ann Sarro is ORDERED to pay 50 percent of all reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of the parties' child, including, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges, for as long as child support is payable under the terms of this decree. If a party incurs health-care expenses for a child by using the services of health-care providers not employed by the HMO or approved by the PPO, except in an emergency, without the written agreement of the other party, the party incurring the services is ORDERED to pay 50 percent and the other party is ORDERED to pay 50 percent of all reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of the child, as set out above.

If the child is enrolled in a health-care plan that is not an HMO or a PPO, Michael A. Sarro is ORDERED to pay 50 percent and Joyce Ann Sarro is ORDERED to pay 50 percent of all reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of the child, including, without limitation, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges, for as long as child support is payable under the terms of this decree.

9. Payment of Uninsured Expenses - IT IS ORDERED that the party who pays for a health-care expense on behalf of the child shall submit to the other party, within ten days of receiving

them, all forms, receipts, bills, and explanations of benefits paid reflecting the uninsured portion of the health-care expenses the paying party incurs on behalf of the child. IT IS FURTHER ORDERED that, within ten days after the nonpaying party receives the explanation of benefits stating benefits paid, that party shall pay his or her share of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the paying party for any advance payment exceeding the paying party's share of the expenses.

10.     Exclusions - The provisions above concerning uninsured expenses shall not be interpreted to include expenses for travel to and from the health-care provider or nonprescription medication.

11.     Reasonableness of Charges - IT IS ORDERED that reasonableness of the charges for health-care expenses shall be presumed on presentation of the bill to a party and that disallowance of the bill by a health insurer shall not excuse that party's obligation to make payment or reimbursement as otherwise provided herein.

12.     Information Required - IT IS ORDERED that a party providing health insurance shall furnish to the other party and the child support registry the following information no later than the thirtieth day after the date the notice of the rendition of this decree is received:

(a)     the Social Security number of the party providing insurance;

(b)     the name and address of the employer of the party providing insurance;

(c)     whether the employer is self-insured or has health insurance available;

(d)     proof that health insurance has been provided for the child; and

(e)     the name of the health insurance carrier, the number of the policy, a copy of the policy and schedule of benefits, a health insurance membership card,

Final Decree of Divorce - Page 22

claim forms, and any other information necessary to submit a claim or, if the employer is self-insured, a copy of the schedule of benefits, a membership card, claim forms, and any other information necessary to submit a claim.

IT IS FURTHER ORDERED that any party carrying health insurance on the child shall furnish to the other party a copy of any renewals or changes to the policy no later than the fifteenth day after the renewal or change is received.

IT IS FURTHER ORDERED that a party providing health insurance shall provide to the other party and the child support registry any additional information regarding health insurance coverage that becomes available to the party providing insurance. IT IS FURTHER ORDERED that the information shall be provided no later than the fifteenth day after the date the information is received.

13. Termination or Lapse of Insurance - If the health insurance coverage for the child lapses or terminates, the party who is providing the insurance is ORDERED to notify the other party no later than the fifteenth day after the date of termination or lapse. If additional health insurance is available or becomes available at a reasonable cost to Michael A. Sarro for the child, Michael A. Sarro is ORDERED to notify Joyce Ann Sarro and the child support registry no later than the fifteenth day after the date the insurance becomes available and to enroll the child in a health insurance plan at the next available enrollment period.

14. Place of Transmittal - IT IS ORDERED that all bills, invoices, statements, claims, explanations of benefits, insurance policies, medical insurance identification cards, other documents, and written notices, as well as payments, required to be transmitted by one party to the other under

the health-care coverage and health insurance provisions of this decree shall be transmitted by the sending party to the residence of the receiving party.

15.     WARNING - A PARENT ORDERED TO PROVIDE HEALTH INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILD, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS OR CONTRIBUTIONS, IF ANY, PAID ON BEHALF OF THE CHILD.

No Credit for Informal Payments.

IT IS ORDERED that the child support as prescribed in this decree shall be exclusively discharged in the manner ordered and that any direct payments made by Michael A. Sarro to Joyce Ann Sarro or any expenditures incurred by Michael A. Sarro during Michael A. Sarro's periods of possession of or access to the child, as prescribed in this decree, for food, clothing, gifts, travel, shelter, or entertainment are deemed in addition to and not in lieu of the support ordered in this decree.

Support as Obligation of Estate.

IT IS ORDERED that the provisions for child support in this decree shall be an obligation of the estate of Michael A. Sarro and shall not terminate on the death of Michael A. Sarro. Payments received for the benefit of the child from the Social Security Administration, Department of Veterans Affairs, other government agency, or life insurance shall be a credit against this obligation.

Termination of Orders on Remarriage of Parties

The provisions of this decree relating to current child support terminate on the remarriage of Michael A. Sarro to Joyce Ann Sarro unless a nonparent or agency has been appointed conservator of the child under chapter 153 of the Texas Family Code. An obligation to pay child support under this decree does not terminate on the death of Joyce Ann Sarro but continues as an obligation to MICHAEL ANDREW SARRO.

*Medical Notification*

Each party is ORDERED to inform the other party within twenty-four hours of any medical condition of the parties' child requiring surgical intervention, hospitalization, or both.

*Information Regarding Parties*

The information required for each party by section 105.006(a) of the Texas Family Code is as follows:

Name:                          Michael A. Sarro
Social Security number:        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
Driver's license number:       07300173       Issuing state:   Texas
Current residence address:     10426 Severn Road, San Antonio, Texas  78217
Mailing address:               10426 Severn Road, San Antonio, Texas  78217
Home telephone number:         (210) 602-8010
Name of employer:              VIA Metropolitan Transit
Address of employment:         800 W. Myrtle, San Antonio, Texas  78212
Work telephone number:         (210) 362-2460

Name:                          Joyce Ann Sarro
Social Security number:        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
Driver's license number        00641322       Issuing state:   Texas
Current residence address:     P.O. Box 762352, San Antonio, Texas  78245
Mailing address:               P.O. Box 762352, San Antonio, Texas  78245
Home telephone number:         (210) 299-3735
Name of employer:              Self-employed
Address of employment:         P.O. Box 762352, San Antonio, Texas  78245
Work telephone number:         (210) 299-3735

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH

OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of the Court or by registered or certified mail addressed to the clerk at 100 Dolorosa, San Antonio, Texas 78205. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, P.O. Box 12017, Austin, Texas 78711-2017.

WARNINGS TO PARTIES: FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

*Division of Marital Estate*

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party and the child of the marriage.

Final Decree of Divorce - Page 27

Property to Husband

IT IS ORDERED AND DECREED that the husband, Michael A. Sarro, is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:

H-1. One-half undivided interest in the following real property: Legal Description: Lot 16, New City Block 19148, Guilbeau Park, Unit 4, in the City of San Antonio, Bexar County, Texas, according to the map or plat of record in Volume 9531, Pages 181-183, Deed and Plat Records of Bexar County, Texas.

H-2. All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the husband or subject to his sole control.

H-3. The following furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment, current in possession of Respondent: Indian picture, three (3) Boston acoustic speakers, two (2) black speaker stands, wheel barrow, Via bench, and BBQ pit.

H-4. All clothing, jewelry, and other personal effects in the possession of the husband or subject to his sole control.

H-5. All sums of cash in the possession of the husband or subject to his sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the husband's sole name or from which the husband has the sole right to withdraw funds or which are subject to the husband's sole control.

H-6. The sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the husband's past, present, or future employment including but not limited to VIA Metropolitan Transit Retirement Plan; and Public Sector Service Center Deferred Compensation account no. 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, subject to that portion awarded to Respondent herein.

H-7. The individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in the husband's name.

H-8. All policies of life insurance (including cash values) insuring the husband's life.

Final Decree of Divorce - Page 28

H-9. The 1992 Acura Vigor motor vehicle together with all prepaid insurance, keys and title documents.

H-10. Any property or interests acquired by Michael A. Sarro after July 17, 1998 which is further confirmed as the separate property of Michael A. Sarro.

Property to Wife

IT IS ORDERED AND DECREED that the wife, Joyce Ann Sarro, is awarded the following as her sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property:

W-1. One-half undivided interest in and to the following real property, including but not limited to any escrow funds, prepaid insurance, keys, house plans, warranties and service contracts, and title and closing documents; and all utility deposits in her name: Legal Description: Lot 16, New City Block 19148, Guilbeau Park, Unit 4, in the City of San Antonio, Bexar County, Texas, according to the map or plat of record in Volume 9531, Pages 181-183, Deed and Plat Records of Bexar County, Texas.

W-2. All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the wife or subject to her sole control.

W-3. All clothing, jewelry, and other personal effects in the possession of the wife or subject to her control.

W-4. All sums of cash in the possession of the wife or subject to her sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the wife's sole name or from which the wife has the sole right to withdraw funds or which are subject to the wife's sole control.

W-5. A 50% portion of Michael A. Sarro's retirement benefits in (a) the income and principal accrued from June 6, 1993 until July 17, 1998, of the VIA Metropolitan Transit Retirement Plan: and (b) a 50% portion of the income accrued from June 6, 1993 until July 17, 1998, of the Public Sector Service Center Deferred Compensation account no. 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, arising out of Michael A. Sarro's employment with VIA Metropolitan Transit, more particularly defined in the Qualified Domestic Relations Order signed by the Court.

W-6. The 1992 Honda Civic motor vehicle together with all prepaid insurance, keys, and title documents.

Final Decree of Divorce - Page 29

W-7. The 1985 Toyota Pickup together with all prepaid insurance, keys, and title documents.

W-8. Any property or interests acquired by Joyce Ann Sarro after July 17, 1998 which is further confirmed as the separate property of Joyce Ann Sarro.

Division of Debt

Debts to Husband

IT IS ORDERED AND DECREED that the husband, Michael A. Sarro, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, these items:

H-1. Any and all debts, charges, liabilities, and other obligations incurred solely by the husband from and after March 10, 1998 unless express provision is made in this decree to the contrary.

H-2. The balance due, including principal, interest, and all other charges, on the promissory note given as part of the purchase price of and secured by a lien on the 1992 Acura Vigor motor vehicle awarded to husband.

H-3. All encumbrances, ad valorem taxes, liens, assessments, or other charge due or to become due on the personal property awarded to the husband in this decree unless express provision is made in this decree.

H-4. All accounts in Petitioner's name, inclluding the following debts, charges, liabilities, and obligations:

1. Capital One Visa

2. Capital One Visa

3. Providian Visa Classic

Final Decree of Divorce - Page 30

4.  Alice Sarro

5.  Sears (Respondent's) account to be closed immediately, Husband is responsible for the balance only through April, 1998.

Debts to Wife

IT IS ORDERED AND DECREED that the wife, Joyce Ann Sarro, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the husband and his property harmless from any failure to so discharge, these items:

W-1.  Any and all debts, charges, liabilities, and other obligations incurred solely by the wife from and after March 10, 1998 unless express provision is made in this decree to the contrary.

W-2.  The balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by Michael A. Sarro, in the original principal sum of approximately $91,718.00, dated March 20, 1996, payable to Old Kent Mortgage Company, and secured by deed of trust on the real property awarded in this decree to husband and wife, which is recorded in the Deed of Trust Records of Bexar County, Texas.

W-3.  All accounts in Respondent's name, including the following debts, charges, liabilities, and obligations:

1.  Circuit City

2.  Spiegal

3.  Best Bank/Visa

4.  JCPenneys

Final Decree of Divorce - Page 31

5.     Mervyns

6.     Bealls

7.     Best Buy

8.     Conns

9.     Dillards

10.     Levitz

11.     Lacks

W-4.     All encumbrances, ad valorem taxes, liens, assessments, or other charge due or to become due on the personal property awarded to the husband in this decree unless express provision is made in this decree.

W-5.     The balance due, including principal, interest and all other charges, on the promissary note payable to Michael Engelte, and given as part of the purchase of and secured by lien on the 1985 Toyota Pickup Truck motor vehicle awarded to wife.

Notice

IT IS ORDERED AND DECREED that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

**PROVISIONS DEALING WITH SALE OF RESIDENCE**

IT IS FURTHER ORDERED AND DECREED that unless otherwise herein, upon the child attaining the age of eighteen years and otherwise emancipated, the property and all improvements located thereon at lot16, block 1, New City Block 19148, Guilbeau Park subdivision, section/unit 4, according to the map, plat, or deed records of San Antonio, Bexar County, Texas, and more

commonly know as 8839 Roquefort, San Antonio, Bexar County, Texas, shall be sold under the following terms and conditions:

1.      The parties shall list the property with a duly licensed real estate broker having sales experience in the area where the property is located, provided further that the real estate broker shall be an active member in the Multiple Listing Service with the San Antonio Board of Realtors.

2.      The property shall be sold for a price that is mutually agreeable to Petitioner and Respondent. If no agreement is reached with 30 days, the court retains jurisdiction to enter any further orders, as necessary.

3.      Respondent shall continue to make all payments of principal, interest, taxes, and insurance on the property after the entry of the decree and during the pendency of the sale, and Respondent shall have the exclusive right to enjoy the use and possession of the premises until closing. All maintenance and repairs necessary to keep the property in its present condition shall be paid by Respondent

4.      At closing, the Respondent shall be entitled to receive seventy-five -percent (75%) of the net proceeds, after payment of closing cost and remaining encumbrance owed to Old Kent Mortgage Company (or its successors or assigns), and Petitioner shall be entitled to receive Twenty -five percent (25%) of the net proceeds, after payment of closing costs and remaining encumbrance owed to Old Kent Mortgage Company (or its successors or assigns).

5.      The real property shall not be used to secure any home equity mortgages prior to the sale.

6.      After July 17, 2002 but prior to the child is otherwise emancipated or by order of the court, the parties may mutually agree ti sell the house under the provisions provided on subparagraphs

(1)-(5) above.

7.     If respondent secures refinancing in her name only, on or before July 12, 2002, no net sales proceeds shall be divided between the parties.

Attorney's Fees

To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the child, each party shall be responsible for his or her own attorney's fees, expenses and costs incurred as a result of legal representation in this case.

Confirmation of Separate Property

IT IS ORDERED AND DECREED that the following described property is confirmed as the separate property of MICHAEL SARRO:

1.     all property and interests acquired by Michael A. Sarro after July 17, 1998; and

2.     any and all of Petitioner's interest in retirement plan and deferred compensation plan on or before June 5, 1993.

IT IS ORDERED AND DECREED that the following described property is confirmed as the separate property of Joyce Ann Sarro:

1.     all property and interests acquired by Joyce Ann Sarro after July 17, 1998; and

2.     personal injury lawsuit against Gunn-Acura; however, Respondent is responsible for payment of all related medical expenses.

*Transfer and Delivery of Property*

Michael A. Sarro is ORDERED to appear in the law offices of Pedro V. Hernandez, Jr. at 301 So. Main Ave., San Antonio, Texas 78204 at 10:00 a.m. on August 26, 1998, and to execute, have

Final Decree of Divorce - Page 34

acknowledged, and deliver to Pedro Hernandez these instruments:

1.      Power of attorney to transfer motor vehicle.

Michael A. Sarro is ORDERED to appear in the law offices of Pedro V. Hernandez, Jr. at 301

So. Main Ave., San Antonio, Texas 78204 at 10:00 a.m. on July 31,1998, and to execute, have

acknowledged, and deliver to John A. Mead these instruments:

1.      Certificate of title to motor vehicle; and

2.      Power of attorney to transfer motor vehicle.

This decree shall serve as a muniment of title to transfer ownership of all property awarded

to any party in this Final Decree of Divorce.

*Direction to Deliver Property*

Michael A. Sarro is ORDERED to deliver to Joyce Ann Sarro on August 26, 1998 at 301 So.

Main Ave., San Antonio, Texas 78204 at 6:00 p.m. these items:

1.      All Tax statements, house papers, payment book and keys in his possession, custody

or control, for property located at 8839 Roquefort, San Antonio, Texas 78250.

Joyce Ann Sarro is ORDERED to deliver to Michael A. Sarro on August 26, 1998 at 301 So. Main

Ave., San Antonio, Texas 78204 at 6:00 p.m. these items:

1.      All legal papers pertaining to the vehicle awarded to husband, a power of attorney,

together with all key's insurances policies, registration, papers, and title documents.

2.      Other items to be picked up my Michael A. Sarro at 8839 Roquefort, San Antonio, Tx

on August 21, 1998, at 6:00 p.m.: Indian picture, three (3) Boston acoustic speakers, Two (2) black

speaker stands, wheel barrow, Via bench, and BBQ pit.

*Court Costs*

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

*Discharge from Discovery Retention Requirement*

IT IS ORDERED AND DECREED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

*Clarifying Orders*

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

14.   *Date of Judgment*

This divorce judicially PRONOUNCED AND RENDERED in Court at San Antonio, Bexar County, Texas, on August 17, 2004 and further noted on the Court's Docket sheet on the same date, but signed on the *1st* day of *April* ~~March~~, 2015.

JUDGE PRESIDING

Final Decree of Divorce - Page 36

APPROVED AS TO FORM ONLY:

LAW OFFICES OF JOHN A. MEAD
Tower Life Building
310 S. St. Mary's Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 222-0981
Facsimile: (210) 281-1845

BY: _____
JOHN A. MEAD
SBN: 13878800
E-Mail: john@johnmeadlaw.com
Attorney for Joyce Ann Sarro

CORDELL & CORDELL, P.C.
10101 Reunion Place, Ste. 250
San Antonio, Texas 78216
Telephone: (210) 812-3400
Facsimile: (210) 812-3401

BY: _____
RACHEL S. SADOVSKY
SBN: 24081315
E-Mail:rsadovsky@cordelllaw.com
Attorney for Michael A. Sarro

_____
MICHAEL A. SARRO, PETITIONER

_____
JOYCE ANN SARRO, RESPONDENT

Final Decree of Divorce - Page 37

# Appendix B



1998CI03821 -D073

## NO. 1998-CI-03821

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| MICHAEL A. SARRO | § | |
| AND | § | 73RD JUDICIAL DISTRICT |
| JOYCE ANN SARRO | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| M.A.S., A CHILD | § | BEXAR COUNTY, TEXAS |

### ORDER DENYING MOTION FOR NEW TRIAL

On June 11, 2015, Judge Nellermoe heard legal argument and considered the Respondent's Motion for New Trial.

The Court finds that the Motion for New Trial is denied.

SIGNED on _____ JUN 1 2 2015 _____.

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

CORDELL & CORDELL, P.C.
10101 Reunion Place,
Suite 250
San Antonio, Texas 78216
Tel: (210) 812-3400
Fax: (210) 812-3401

By: _____
Cordell & Cordell, LLP, by Rachel S. Sadovsky,
Attorney for Michael A. Sarro
State Bar No. 24081315
santoffice@cordelllaw.com

---

*IMOM Sarro/98-CI-03821*
*Order Denying Motion for New Trial/RSS*

*Page 1*

LAW OFFICES OF JOHN A. MEAD
Tower Life Building
310 S. St. Mary's St., Suite 1470
San Antonio, TX 78205
Tel: (210) 222-0981
Fax: (210) 281-1845

By: _____
JOHN A. MEAD
Attorney for Joyce Ann Sarro
State Bar No.:13878800
john@johnmeadlaw.com

# Appendix C

NO. <u>98-CI-03821</u>

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| MICHAEL A. SARRO | § | |
| AND | § | 73RD JUDICIAL DISTRICT |
| JOYCE ANN SARRO | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| MICHAEL ANDREW SARRO, A CHILD | § | BEXAR COUNTY, TEXAS |

## FINAL DECREE OF DIVORCE

On July 17, 1998, the Court heard this case.

1.    <u>Appearances</u>.

Petitioner, MICHAEL A. SARRO, appeared in person and through attorney of record, PEDRO V. HERNANDEZ, JR., and announced ready for trial.

Respondent, JOYCE ANN SARRO, appeared in person and through attorney of record, ABEL A. DOMINGUEZ, and announced ready for trial.

2.    <u>Record</u>.

The record of testimony was duly reported by ___Denise Shoemaker___.

3.    <u>Jurisdiction and Domicile</u>.

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed. The Court finds Petitioner has been a domiciliary of Texas for at least a six-month period preceding the filing of this action and a resident of the county in which this suit is filed for at least a ninety-day period preceding the filing of this action. All persons entitled to citation were properly cited.

4.    <u>Jury</u>.

A jury was waived, and all questions of fact and of law were submitted to the Court.

5.    <u>Divorce</u>.

IT IS ORDERED AND DECREED that MICHAEL A. SARRO, Petitioner, and JOYCE

Page -1-

ANN SARRO, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

6.      Child of the Marriage.

The Court finds that Petitioner and Respondent are the parents of the following child:

Name:                    MICHAEL ANDREW SARRO

Sex:   MALE

Birthplace:SAN ANTONIO, TX

Birth date:June 23, 1994

Home state:Texas

The Court finds no other children of the marriage are expected.

7.      Conservatorship and Support.

The Court, having considered the circumstances of the parents and of the child, finds that the following orders are in the best interest of the child.

Parent Joint Managing Conservators.

IT IS ORDERED that MICHAEL A. SARRO and JOYCE ANN SARRO are appointed parent joint managing conservators of the following child:  MICHAEL ANDREW SARRO.

Rights and Duties at All Times.

IT IS ORDERED that, at all times, MICHAEL A. SARRO and JOYCE ANN SARRO, as parent joint managing conservators, shall each have the following rights and duty:

1.      the right to receive information from the other parent concerning the health, education, and welfare of the child;

2.      the duty to inform the other parent in a timely manner of significant information concerning the health, education, and welfare of the child;

3.      the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the child;

4.      the right of access to medical, dental, psychological, and educational records of the child;

5.      the right to consult with a physician, dentist, or psychologist of the child;

6.      the right to consult with school officials concerning the child's welfare and educational status, including school activities;

7.      the right to attend school activities;

8.      the right to be designated on the child's records as a person to be notified in case of an emergency;

9.      the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the child; and

10.      the right to manage the estate of the child to the extent the estate has been created by the parent or the parent's family.

### Rights and Duties during Periods of Possession.

IT IS ORDERED that, during their respective periods of possession, MICHAEL A. SARRO and JOYCE ANN SARRO, as parent joint managing conservators, shall each have the following rights and duties:

1.      the duty of care, control, protection, and reasonable discipline of the child;

2.      the duty to support the child, including providing the child with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3.      the right to consent for the child to medical and dental care not involving an invasive procedure;

4.      the right to consent for the child to medical, dental, and surgical treatment during an emergency involving immediate danger to the health and safety of the child; and

5. :      the right to direct the moral and religious training of the child.

### Other Rights and Duties of Petitioner.

IT IS ORDERED that MICHAEL A. SARRO, as a parent joint managing conservator, shall have the following rights and duty:

1.      the right to consent to medical, dental, and surgical treatment involving invasive procedures and to consent to psychiatric and psychological treatment of the child subject to the agreement of the other parent conservator;

2.      the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child subject to the agreement of the other parent conservator;

3.      the right to consent to marriage and to enlistment in the armed forces of the United States subject to the agreement of the other parent conservator;

4.      the right to make decisions concerning the child's education subject to the agreement of the other parent conservator, except as otherwise ordered herein by the Court;

5.      the right to the services and earnings of the child subject to the agreement of the other parent conservator;

6.      except when a guardian of the child's estate or a guardian or attorney ad litem has been appointed for the child, the right to act as an agent of the child in relation to the child's

Page -3-

estate if the child's action is required by a state, the United States, or a foreign government subject to the agreement of the other parent conservator; and

7.    the duty to manage the estate of the child to the extent the estate has been created by community property or the joint property of the parents subject to the agreement of the other parent conservator.

Other Rights and Duty of Respondent.

IT IS ORDERED that JOYCE ANN SARRO, as a parent joint managing conservator, shall have the following rights and duty:

1.    the right to establish the primary residence of the child;

2.    the right to consent to medical, dental, and surgical treatment involving invasive procedures and to consent to psychiatric and psychological treatment of the child subject to the agreement of the other parent conservator;

3.    the right to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child;

4.    the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child subject to the agreement of the other parent conservator;

5.    the right to consent to marriage and to enlistment in the armed forces of the United States subject to the agreement of the other parent conservator;

6.    the right to make decisions concerning the child's education subject to the agreement of the other parent conservator, except as otherwise ordered herein by the court;

7.    the right to the services and earnings of the child subject to the agreement of the other parent conservator;

8.    except when a guardian of the child's estate or a guardian or attorney ad litem has been appointed for the child, the right to act as an agent of the child in relation to the child's estate if the child's action is required by a state, the United States, or a foreign government subject to the agreement of the other parent conservator; and

9.    the duty to manage the estate of the child to the extent the estate has been created by community property or the joint property of the parents subject to the agreement of the other parent conservator.

Education - No Home School

IT IS ORDERED that the child shall not be educated by at home by Respondent, Home Schooling, unless otherwise ordered by the court.

Geographical Area for Primary Residence.

IT IS ORDERED that the primary residence of the child shall be within Bexar, Bandera, Medina, Atascosa or Comal County, TX. The parties shall not remove the child from within Bexar, Bandera, Medina, Atascosa or Comal County, TX for the purpose of changing the primary residence of the child until modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court. IT IS FURTHER ORDERED that JOYCE ANN SARRO shall have exclusive right to establish the child's primary residence within Bexar, Bandera, Medina, Atascosa or Comal County, TX.

## Standard Possession Order

The Court finds that the following provisions of this Standard Possession Order are intended to and do comply with the requirements of Texas Family Code sections 153.311 through 153.317. IT IS ORDERED that the conservators shall comply with all terms and conditions of this Standard Possession Order. IT IS ORDERED that this Standard Possession Order is effective immediately and applies to all periods of possession occurring on and after the signing of this Standard Possession Order. IT IS, THEREFORE, ORDERED:

(a)     Definitions

1.     In this Standard Possession Order "school" means the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides.

2.     In this Standard Possession Order "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

(b)     Mutual Agreement or Specified Terms for Possession

IT IS ORDERED that the conservators shall have possession of the child at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is ORDERED that the conservators shall have possession of the child under the specified terms set out in this Standard Possession Order.

(c)     Parents Who Reside 100 Miles or Less Apart

Except as otherwise explicitly provided in this Standard Possession Order, when MICHAEL A. SARRO resides 100 miles or less from the primary residence of the child, MICHAEL A. SARRO shall have the right to possession of the child as follows:

1.      Weekends - On weekends, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

2.      Weekend Possession Extended by a Friday Holiday. Except as otherwise explicitly provided in this Standard Possession Order, if a weekend period of possession by MICHAEL A. SARRO begins on a Friday that is a school holiday during the regular school term or a federal, state, or local holiday during the summer months when school is not in session, that weekend period of possession shall begin at 6:00 p.m. on the Thursday immediately preceding the Friday holiday or school holiday.

3.      Weekend Possession Extended by a Monday Holiday. Except as otherwise explicitly provided in this Standard Possession Order, if a weekend period of possession by MICHAEL A. SARRO ends on or is immediately followed by a Monday that is a school holiday during the regular school term or a federal, state, or local holiday during the summer months when school is not in session, that weekend period of possession shall end at 6:00 p.m. on that Monday holiday or school holiday.

4.      Wednesdays - On Wednesday of each week during the regular school term, beginning at 6:00 p.m. and ending at 8:00 p.m.

5.      Christmas Holidays in Even-Numbered Years - In even-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 26.

6.      Christmas Holidays in Odd-Numbered Years - In odd-numbered years, beginning at noon on December 26 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

7.      Thanksgiving in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the following Sunday.

8.      Spring Break in Even-Numbered Years - In even-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

9.      Extended Summer Possession by MICHAEL A. SARRO

With Written Notice by May 1 - If MICHAEL A. SARRO gives JOYCE ANN SARRO written notice by May 1 of a year specifying an extended period or periods of summer possession for that year, MICHAEL A. SARRO shall have possession of the child for thirty days beginning no earlier than the day after the child's school is dismissed

for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, as specified in the written notice. These periods of possession shall begin and end at 6:00 p.m.

Without Written Notice by May 1 - If MICHAEL A. SARRO does not give JOYCE ANN SARRO written notice by May 1 of a year specifying an extended period or periods of summer possession for that year, MICHAEL A. SARRO shall have possession of the child for thirty consecutive days in that year beginning at 6:00 p.m. on July 1 and ending at 6:00 p.m. on July 31.

10. Child's Birthday - If MICHAEL A. SARRO is not otherwise entitled under this Standard Possession Order to present possession of the child on the child's birthday, MICHAEL A. SARRO shall have possession of the child beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that MICHAEL A. SARRO picks up the child from JOYCE ANN SARRO's residence and returns the child to that same place.

11. Father's Day Weekend - Each year, beginning at 6:00 p.m. on the Friday preceding Father's Day and ending at 6:00 p.m. on Father's Day, provided that if he is not otherwise entitled under this Standard Possession Order to present possession of the child, he shall pick up the child from JOYCE ANN SARRO's residence and return the child to that same place.

Notwithstanding the weekend and Wednesday periods of possession ORDERED

for MICHAEL A. SARRO, it is explicitly ORDERED that JOYCE ANN SARRO shall

have a superior right of possession of the child as follows:

1. Christmas Holidays in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 26.

2. Christmas Holidays in Even-Numbered Years - In even-numbered years, beginning at noon on December 26 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

3. Thanksgiving in Even-Numbered Years - In even-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the following Sunday.

4. Spring Break in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation

Page -7-

and ending at 6:00 p.m. on the day before school resumes after that vacation.

5.     <u>Summer Weekend Possession by JOYCE ANN SARRO</u> - If JOYCE ANN SARRO gives MICHAEL A. SARRO written notice by June 1 of a year, JOYCE ANN SARRO shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of the extended summer possession by MICHAEL A. SARRO in that year, provided that JOYCE ANN SARRO picks up the child from MICHAEL A. SARRO and returns the child to that same place.

6.     <u>Extended Summer Possession by JOYCE ANN SARRO</u> - If JOYCE ANN SARRO gives MICHAEL A. SARRO written notice by May 15 of a year or gives MICHAEL A. SARRO fourteen days' written notice on or after May 16 of a year, JOYCE ANN SARRO may designate one weekend beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation, during which an otherwise scheduled weekend period of possession by MICHAEL A. SARRO shall not take place in that year, provided that the weekend so designated does not interfere with MICHAEL A. SARRO's period or periods of extended summer possession or with Father's Day Weekend.

7.     <u>Child's Birthday</u> - If JOYCE ANN SARRO is not otherwise entitled under this Standard Possession Order to present possession of the child on the child's birthday, JOYCE ANN SARRO shall have possession of the child beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that JOYCE ANN SARRO picks up the child from MICHAEL A. SARRO's residence and returns the child to that same place.

8.     <u>Mother's Day Weekend</u> - Each year, beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending at 6:00 p.m. on Mother's Day, provided that if JOYCE ANN SARRO is not otherwise entitled under this Standard Possession Order to present possession of the child, she shall pick up the child from MICHAEL A. SARRO's residence and return the child to that same place.

JOYCE ANN SARRO shall have the right of possession of the child at all other times not specifically designated in this Standard Possession Order for MICHAEL A. SARRO.

(d)     Parents Who Reside More Than 100 Miles Apart

Except as otherwise explicitly provided in this Standard Possession Order,

when MICHAEL A. SARRO resides more than 100 miles from the residence of

the child, MICHAEL A. SARRO shall have the right to possession of the child as

follows:

1.      Weekends - Unless MICHAEL A. SARRO elects the alternative period of weekend possession described in the next paragraph, MICHAEL A. SARRO shall have the right to possession of the child on weekends, beginning at 6:00 p.m. on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday. Except as otherwise explicitly provided in this Standard Possession Order, if such a weekend period of possession by MICHAEL A. SARRO begins on a Friday that is a school holiday during the regular school term or a federal, state, or local holiday during the summer months when school is not in session, or if the period ends on or is immediately followed by a Monday that is such a holiday, that weekend period of possession shall begin at 6:00 p.m. on the Thursday immediately preceding the Friday holiday or school holiday or end at 6:00 p.m. on that Monday holiday or school holiday, as applicable.

Alternate weekend possession - In lieu of the weekend possession described in the foregoing paragraph, MICHAEL A. SARRO shall have the right to possession of the child not more than one weekend per month of MICHAEL A. SARRO's choice beginning at 6:00 p.m. on the day school recesses for the weekend and ending at 6:00 p.m. on the day before school resumes after the weekend. Except as otherwise explicitly provided in this Standard Possession Order, if such a weekend period of possession by MICHAEL A. SARRO begins on a Friday that is a school holiday during the regular school term or a federal, state, or local holiday during the summer months when school is not in session, or if the period ends on or is immediately followed by a Monday that is such a holiday, that weekend period of possession shall begin at 6:00 p.m. on the Thursday immediately preceding the Friday holiday or school holiday or end at 6:00 p.m. on that Monday holiday or school holiday, as applicable. MICHAEL A. SARRO may elect an option for this alternative period of weekend possession by giving written notice to JOYCE ANN SARRO within ninety days after the parties begin to reside more than 100 miles apart. If MICHAEL A. SARRO makes this election, MICHAEL A. SARRO shall give JOYCE ANN SARRO fourteen days' written or telephonic notice preceding a designated weekend. The weekends chosen shall not conflict with the provisions regarding Christmas, Thanksgiving, the child's birthday, and Mother's Day Weekend below.

2.      Christmas Holidays in Even-Numbered Years - In even-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 26.

3.      Christmas Holidays in Odd-Numbered Years - In odd-numbered years, beginning at noon on December 26 and ending at 6:00 p.m. on the day before school

resumes after that Christmas school vacation.

     4.     Thanksgiving in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the following Sunday.

     5.     Spring Break in All Years - Every year, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

     6.     Extended Summer Possession by MICHAEL A. SARRO -

With Written Notice by May 1 - If MICHAEL A. SARRO gives JOYCE ANN SARRO written notice by May 1 of a year specifying an extended period or periods of summer possession for that year, MICHAEL A. SARRO shall have possession of the child for forty-two days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, as specified in the written notice. These periods of possession shall begin and end at 6:00 p.m.

Without Written Notice by May 1 - If MICHAEL A. SARRO does not give JOYCE ANN SARRO written notice by May 1 of a year specifying an extended period or periods of summer possession for that year, MICHAEL A. SARRO shall have possession of the child for forty-two consecutive days beginning at 6:00 p.m. on June 15 and ending at 6:00 p.m. on July 27 of that year.

     7.     Child's Birthday - If MICHAEL A. SARRO is not otherwise entitled under this Standard Possession Order to present possession of the child on the child's birthday, MICHAEL A. SARRO shall have possession of the child beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that MICHAEL A. SARRO picks up the child from JOYCE ANN SARRO's residence and returns the child to that same place.

     8.     Father's Day Weekend - Each year, beginning at 6:00 p.m. on the Friday preceding Father's Day and ending at 6:00 p.m. on Father's Day, provided that if MICHAEL A. SARRO is not otherwise entitled under this Standard Possession Order to present possession of the child, he shall pick up the child from JOYCE ANN SARRO's residence and return the child to that same place.

Notwithstanding the weekend periods of possession ORDERED for MICHAEL

A. SARRO, it is explicitly ORDERED that JOYCE ANN SARRO shall have a superior

right of possession of the child as follows:

1.      Christmas Holidays in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 26.

2.      Christmas Holidays in Even-Numbered Years - In even-numbered years, beginning at noon on December 26 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

3.      Thanksgiving in Even-Numbered Years - In even-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the following Sunday.

4.      Summer Weekend Possession by JOYCE ANN SARRO - If JOYCE ANN SARRO gives MICHAEL A. SARRO written notice by June 1 of a year, JOYCE ANN SARRO shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of possession by MICHAEL A. SARRO during MICHAEL A. SARRO's extended summer possession in that year, provided that if a period of possession by MICHAEL A. SARRO in that year exceeds thirty days, JOYCE ANN SARRO may have possession of the child under the terms of this provision on any two nonconsecutive weekends during that period and provided that JOYCE ANN SARRO picks up the child from MICHAEL A. SARRO and returns the child to that same place.

5.      Extended Summer Possession by JOYCE ANN SARRO - If JOYCE ANN SARRO gives MICHAEL A. SARRO written notice by June 1 of a year, JOYCE ANN SARRO may designate twenty-one days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, during which MICHAEL A. SARRO shall not have possession of the child, provided that the period or periods so designated do not interfere with MICHAEL A. SARRO's period or periods of extended summer possession or with Father's Day Weekend.

6.      Child's Birthday - If JOYCE ANN SARRO is not otherwise entitled under this Standard Possession Order to present possession of the child on the child's birthday, JOYCE ANN SARRO shall have possession of the child beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that JOYCE ANN SARRO picks up the child from MICHAEL A. SARRO's residence and returns the child to that same place.

7.      Mother's Day Weekend - Each year, beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending at 6:00 p.m. on Mother's Day, provided that if

JOYCE ANN SARRO is not otherwise entitled under this Standard Possession Order to present possession of the child, she shall pick up the child from MICHAEL A. SARRO's residence and return the child to that same place.

JOYCE ANN SARRO shall have the right of possession of the child at all other times not specifically designated in this Standard Possession Order for MICHAEL A. SARRO.

(e)     General Terms and Conditions

Except as otherwise explicitly provided in this Standard Possession Order, the terms and conditions of possession of the child that apply regardless of the distance between the residence of a parent and the child are as follows:

1.     Surrender of Child by JOYCE ANN SARRO - JOYCE ANN SARRO is ORDERED to surrender the child to MICHAEL A. SARRO at the beginning of each period of MICHAEL A. SARRO's possession at the residence of JOYCE ANN SARRO.

2.     Return of Child by MICHAEL A. SARRO - MICHAEL A. SARRO is ORDERED to return the child to the residence of JOYCE ANN SARRO at the end of each period of possession. However, it is ORDERED that, if MICHAEL A. SARRO's county of residence remains the same after rendition of this order and JOYCE ANN SARRO's county of residence changes, effective on the date of the change of residence by JOYCE ANN SARRO, MICHAEL A. SARRO shall surrender the child to JOYCE ANN SARRO at the residence of MICHAEL A. SARRO at the end of each period of possession.

3.     Surrender of Child by MICHAEL A. SARRO - MICHAEL A. SARRO is ORDERED to surrender the child to JOYCE ANN SARRO, if the child is in MICHAEL A. SARRO's possession or subject to MICHAEL A. SARRO's control, at the beginning of each period of JOYCE ANN SARRO's exclusive periods of possession, at the place designated in this Standard Possession Order.

4.     Return of Child by JOYCE ANN SARRO - JOYCE ANN SARRO is ORDERED to return the child to MICHAEL A. SARRO, if MICHAEL A. SARRO is entitled to possession of the child, at the end of each of JOYCE ANN SARRO's exclusive periods of possession, at the place designated in this Standard Possession Order.

5.     Personal Effects - Each conservator is ORDERED to return with the child

Page -12-

the personal effects that the child brought at the beginning of the period of possession.

6.  Designation of Competent Adult - Each conservator may designate any competent adult to pick up and return the child, as applicable. IT IS ORDERED that a conservator or a designated competent adult be present when the child is picked up or returned.

7.  Inability to Exercise Possession - Each conservator is ORDERED to give notice to the person in possession of the child on each occasion that the conservator will be unable to exercise that conservator's right of possession for any specified period.

8.  Written Notice - Written notice shall be deemed to have been timely made if received or postmarked before or at the time that notice is due.

This concludes the Standard Possession Order.

Duration.
The periods of possession ordered above apply to the child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.
Child Support.

IT IS ORDERED that MICHAEL A. SARRO is obligated to pay and shall pay to JOYCE ANN SARRO child support of $491.79 per month, with the first payment being due and payable on August 1, 1998 and a like payment being due and payable on the 1st day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1.  the child reaches the age of eighteen years, provided that, if the child is fully enrolled in an accredited secondary school in a program leading toward a high school diploma, the periodic child-support payments shall continue to be due and paid until the end of the month in which the child graduates;

2.  the child marries;

3.  the child dies;

4.  the child's disabilities are otherwise removed for general purposes; or

5.  further order modifying this child support.
Withholding from Earnings.

IT IS ORDERED that any employer of MICHAEL A. SARRO shall be ordered to withhold from earnings for child support from the disposable earnings of MICHAEL A. SARRO for the support of MICHAEL ANDREW SARRO.

<u>Order to Employer</u>.

On this date the Court signed an "Employer's Order to Withhold from Earnings for Child Support."

IT IS ORDERED that all payments shall be made through Bexar County Child Support Registry, P O Box 839901, San Antonio, TX 78283 and then remitted by that agency to JOYCE ANN SARRO for the support of the child. IT IS FURTHER ORDERED that MICHAEL A. SARRO shall pay, when due, all fees charged by that agency.

IT IS FURTHER ORDERED that MICHAEL A. SARRO shall notify this Court and JOYCE ANN SARRO by U.S. certified mail, return receipt requested, of any change of address and of any termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of MICHAEL A. SARRO and the name and address of obligor's current employer, whenever that information becomes available.

IT IS ORDERED that, on the request of a prosecuting attorney, the attorney general, JOYCE ANN SARRO, or MICHAEL A. SARRO, the clerk of this Court shall cause a certified copy of the "Employer's Order to Withhold from Earnings for Child Support" to be delivered to any employer. IT IS FURTHER ORDERED that the clerk of this Court shall attach a copy of subchapter C of chapter 158 of the Texas Family Code for the information of any employer.

<u>Health Care</u>.

IT IS ORDERED that health insurance shall be provided for the child as follows:

1.     MICHAEL A. SARRO's Responsibility - It is the intent and purpose of this decree that MICHAEL A. SARRO shall, at all times, provide and pay for health insurance for the child. IT IS THEREFORE ORDERED that, as additional child support, MICHAEL A. SARRO shall provide health insurance for the parties' child through (a) coverage available through MICHAEL A. SARRO's employment, (b) coverage available through JOYCE ANN SARRO's employment, (c) the purchase and maintenance of health insurance coverage as set out below, (d) monthly medical support payments withheld from earnings or (e) conversion (at a later date) of health insurance covering the child.

2.     Definitions - "Health insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services and may be provided through a health maintenance organization or other private or public organization.

"Through employment" means through the party's employment or membership in a union,

trade association, or other organization.

3. Insurance through MICHAEL A. SARRO's Employment - IT IS ORDERED that, if health insurance is available for the child through MICHAEL A. SARRO's employment, MICHAEL A. SARRO shall, at obligor's sole cost and expense, keep and maintain at all times in full force and effect the health insurance coverage that now insures the parties' child through MICHAEL A. SARRO's employer as issued by VIA Care Insurance Company, or a successor company, or through such health insurance plan as is available through other employment or other insurance provider.

4. Insurance through JOYCE ANN SARRO's Employment - If health insurance is not available for the child to MICHAEL A. SARRO through obligor's employment but is available to JOYCE ANN SARRO through obligee's employment, JOYCE ANN SARRO is ORDERED to have the child covered as obligee's dependent on obligee's health insurance plan and MICHAEL A. SARRO is ORDERED to pay to JOYCE ANN SARRO at obligee's last known address the cost of insuring the child on JOYCE ANN SARRO's health insurance plan on the first day of each month after MICHAEL A. SARRO receives written demand from JOYCE ANN SARRO for payment.

5. Conversion of Policy - IT IS ORDERED that if the party through whose employment health insurance has been provided for the child is leaving that employment or for any other reason health insurance will not be available for the child through the employment of either party, the party leaving employment or losing coverage shall, within ten days of termination of his or her employment or coverage, convert the policy to individual coverage for the child in an amount equal to or exceeding the coverage at the time his or her employment or coverage is terminated. Further, if that health insurance was available through JOYCE ANN SARRO's employment, MICHAEL A. SARRO shall reimburse JOYCE ANN SARRO for the cost of the converted policy in accordance with paragraph 4. above.

6. If Policy Not Convertible - If the health insurance policy covering the child is not convertible and if no health insurance is available for the child through the employment of either party, IT IS ORDERED that MICHAEL A. SARRO shall purchase and maintain, at MICHAEL A. SARRO's sole cost and expense, health insurance coverage for the child. MICHAEL A. SARRO is ORDERED to provide verification of the purchase of the insurance to JOYCE ANN SARRO at JOYCE ANN SARRO's last known address, including the insurance certificate number and the plan summary, no later than 15 days following the issuance of the policy.

7. Claim Forms - Except as provided in paragraph 9. below, the party who is not

carrying the health insurance policy covering the child is ORDERED to submit to the party carrying the policy, within ten days of receiving them, any and all forms, receipts, bills, and statements reflecting the health-care expenses the party not carrying the policy incurs on behalf of the child.

The party who is carrying the health insurance policy covering the child is ORDERED to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of the child to the insurance carrier within ten days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

8.    Constructive Trust for Payments Received - IT IS ORDERED that any insurance payments received by the party carrying the health insurance policy covering the child from the health insurance carrier as reimbursement for health-care expenses incurred by or on behalf of the child shall belong to the party who incurred and paid those expenses. IT IS FURTHER ORDERED that the party carrying the policy is designated a constructive trustee to receive any insurance checks or payments for health-care expenses incurred and paid by the other party, and the party carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits, to the other party within three days of receiving them.

9.    Filing by Party Not Carrying Insurance - In accordance with article 3.51-13 of the Texas Insurance Code, IT IS ORDERED that the party who is not carrying the health insurance policy covering the child may, at that party's option, file directly with the insurance carrier with whom coverage is provided for the benefit of the child any claims for health-care expenses, including, but not limited to, medical, hospitalization, and dental costs. However, only the party carrying the health insurance may sign the claim form. Further, for the sole purpose of article 3.51-13 of the Texas Insurance Code, the party who is not carrying the health insurance policy is designated the managing conservator of the child.

10.    Secondary Coverage - IT IS ORDERED that nothing in this decree shall prevent either party from providing secondary health insurance coverage for the child at that party's sole cost and expense. IT IS FURTHER ORDERED that if a party provides secondary health insurance coverage for the child, both parties shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the child and to ensure that the party who pays for health-care expenses for the child is reimbursed for the payment.

11.    Uninsured Expenses - MICHAEL A. SARRO is ORDERED to pay 50 percent and JOYCE ANN SARRO is ORDERED to pay 50 percent of all reasonable and necessary

health-care expenses not paid by insurance and incurred by or on behalf of the parties' child, including, without limitation, the yearly deductible and medical, prescription drug, dental, eye care, ophthalmological, and orthodontic charges, for as long as child support is payable under the terms of this decree.

12. Payment of Uninsured Expenses - IT IS ORDERED that the party who pays for a health-care expense on behalf of the child shall submit to the other party, within ten days of receiving them, all forms, receipts, bills, and statements reflecting the uninsured portion of the health-care expenses the paying party incurs on behalf of the child. IT IS FURTHER ORDERED that, within ten days after the nonpaying party receives the forms, receipts, bills, or statements, that party shall pay his or her share of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the paying party for any advance payment exceeding the paying party's share of the expenses.

13. Exclusions - The provisions above concerning uninsured expenses shall not be interpreted to include expenses for psychological testing, travel to and from the health-care provider, or nonprescription medication.

14. Reasonableness of Charges - IT IS ORDERED that reasonableness of the charges for health-care expenses shall be presumed on presentation of the bill to a party and that disallowance of the bill by a health insurer shall not excuse that party's obligation to make payment or reimbursement as otherwise provided herein.

15. Information Required - IT IS ORDERED that a party providing health insurance shall furnish to the other party the following information no later than the thirtieth day after the date the notice of the rendition of this decree is received:

    (a)    the Social Security number of the party providing insurance;

    (b)    the name and address of the employer of the party providing insurance;

    (c)    whether the employer is self-insured or has health insurance available;

    (d)    proof that health insurance has been provided for the child; and

    (e)    the name of the health insurance carrier, the number of the policy, a copy of the policy and schedule of benefits, a health insurance membership card, claim forms, and any other information necessary to submit a claim or, if the employer is self-insured, a copy of the schedule of benefits, a membership card, claim forms, and any other information necessary to submit a claim.

IT IS FURTHER ORDERED that any party carrying health insurance on the child shall furnish to the other party a copy of any renewals or changes to the policy no later than the

fifteenth day after the renewal or change is received.

IT IS FURTHER ORDERED that a party providing health insurance shall provide to the other party any additional information regarding health insurance coverage that becomes available to the party providing insurance. IT IS FURTHER ORDERED that the information shall be provided no later than the fifteenth day after the date the information is received.

16. Order to Employer Entered - On this date an "Employer's Order to Withhold from Earnings for Child Support" was entered by the Court. For the purpose of section 1169 of title 29 of the United States Code, the party not carrying the health insurance policy is designated the custodial parent and alternate recipient's representative.

17. Termination or Lapse of Insurance - If the health insurance coverage for the child lapses or terminates, the party who is providing the insurance is ORDERED to notify the other party no later than the fifteenth day after the date of termination or lapse. If additional health insurance is available or becomes available to MICHAEL A. SARRO for the child, MICHAEL A. SARRO must notify JOYCE ANN SARRO no later than the fifteenth day after the date the insurance becomes available. MICHAEL A. SARRO must enroll the child in a health insurance plan at the next available enrollment period.

18. Place of Transmittal - IT IS ORDERED that all bills, invoices, statements, claims, explanations of benefits, insurance policies, medical insurance identification cards, other documents, and written notices, as well as payments, required to be transmitted by one party to the other under the health-care coverage and health insurance provisions of this decree shall be transmitted by the sending party to the residence of the receiving party.

19. Warning - A parent ordered to provide health insurance who fails to do so is liable for necessary medical expenses of the child, without regard to whether the expenses would have been paid if health insurance had been provided.

No Credit for Informal Payments.

IT IS ORDERED that the child support as prescribed in this decree shall be exclusively discharged in the manner ordered and that any direct payments made by MICHAEL A. SARRO to JOYCE ANN SARRO or any expenditures incurred by MICHAEL A. SARRO during MICHAEL A. SARRO's periods of possession of or access to the child, as prescribed in this decree, for food, clothing, gifts, travel, shelter, or entertainment are deemed in addition to and not in lieu of the support ordered in this decree.

Support as Obligation of Estate.

IT IS ORDERED that the provisions for child support in this decree shall be an obligation

of the estate of MICHAEL A. SARRO and shall not terminate on the death of MICHAEL A. SARRO. Payments received for the benefit of the child from the Social Security Administration, Department of Veterans Affairs, other government agency, or life insurance shall be a credit against this obligation.

Medical Notification.

Each party is ORDERED to inform the other party within twenty-four hours of any medical condition of the parties' child requiring surgical intervention, hospitalization, or both.

Information Regarding Parties and Child

The information required for each party by section 105.006(a) of the Texas Family Code is as follows:

Name:                  MICHAEL A. SARRO

Social Security number: 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

Driver's license number: 07300173; Issuing state:Texas

Current residence address: 1823 W. Magnolia, San Antonio, TX 78201

Mailing address: P. O . Box 7453, San Antonio, TX 78207

Home telephone number:NONE; Cellular phone number: (210) 823-3422

Name of employer: VIA.Metropolitan Transit

Address of employment: 1720 N. Flores St., San Antonio, TX 78212

Work telephone number:(210) 362-2499

Name:                  JOYCE ANN SARRO

Social Security number: 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

Driver's license number: _____ Issuing state: Texas

Current residence address: 8839 Roquefort, San Antonio, TX 78250

Mailing address: 8839 Roquefort, San Antonio, TX 78250

Home telephone number:(210) 543-7027

Name of employer: _Judicial Services_

Address of employment: _4203 Woodcock, San Antonio, TX 78228_

Work telephone number:(210) _681-4885_

Name:                  MICHAEL ANDREW SARRO

Social Security number: 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

Driver's license number:none; Issuing state: Texas

Current residence address: with mother

Mailing address: same

Home telephone number: same

Name of employer :none

Address of employment: none

Work telephone number: none

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court and the State Case Registry by delivering a copy of the notice either in person to the clerk of the Court or by registered or certified mail addressed to the clerk.

WARNINGS TO PARTIES: FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN

FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

8.      Division of Marital Estate.

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party and the child of the marriage.

Property to Husband.

IT IS ORDERED AND DECREED that the husband, MICHAEL A. SARRO, is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:

H-1.    One-half undivided interest in the following real property:

Legal Description: Lot 16, New City Block 19148, Guilbeau Park, Unit 4, in the City of San Antonio, Bexar County, Texas, according to the map or plat of record in Volume 9531, Pages 181-183, Deed and Plat Records of Bexar County, Texas;

H-2.    All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the husband or subject to his sole control.

H-3.    The following furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment, currently in possession of Respondent: Indian picture, three (3) Boston acoustic speakers, two (2) black speaker stands, wheel barrow, Via bench, and BBQ pit.

H-4.    All clothing, jewelry, and other personal effects in the possession of the husband or subject to his sole control.

H-5.    All sums of cash in the possession of the husband or subject to his sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the husband's sole name or

from which the husband has the sole right to withdraw funds or which are subject to the husband's sole control.

H-6.   All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the husband's past, present, or future employment, including but not limited to: VIA Metropolitan Transit Retirement Plan; and Public Sector Service Center Deferred Compensation account no. 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, subject to that portion awarded to Respondent herein.

H-8,   H-7.   All policies of life insurance (including cash values) insuring the husband's life.
Property to Wife.

IT IS ORDERED AND DECREED that the wife, JOYCE ANN SARRO, is awarded the following as her sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property:

W-1.   One-half undivided interest in and to the following real property, including but not limited to any escrow funds, prepaid insurance, keys, house plans, warranties and service contracts, and title and closing documents; and all utility deposits in her name;

Legal Description: Lot 16, New City Block 19148, Guilbeau Park, Unit 4, in the City of San Antonio, Bexar County, Texas, according to the map or plat of record in Volume 9531, Pages 181-183, Deed and Plat Records of Bexar County, Texas;

W-1.   All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the wife or subject to her sole control.

W-2.   All clothing, jewelry, and other personal effects in the possession of the wife or subject to her sole control.

W-3.   All sums of cash in the possession of the wife or subject to her sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the wife's sole name or from which the wife has the sole right to withdraw funds or which are subject to the wife's sole control.

W-4.   A 50% portion of MICHAEL A. SARRO's retirement benefits in: (a) the income and principal accrued from 06/06/93 until 07/17/98, of the VIA Metropolitan Transit Retirement Plan; and (b) a 50% portion of the income accrued from 06/06/93 until 07/17/98, of the Public

H-8.  The 1992 Acura Vigor together with all prepaid insurance, keys and title documents.

Page -22-

Sector Service Center Deferred Compensation acct no. 452217201 arising out of MICHAEL A. SARRO's employment with VIA Metropolitan Transit, more particularly defined in the Qualified Domestic Relations Orders signed by the Court, effective on the day this Final Decree of Divorce is signed.

W-5. The 1992 Honda Civic together with all prepaid insurance, keys, and title

W-6. —— documents.

Division of Debt.

Debts to Husband

IT IS ORDERED AND DECREED that the husband, MICHAEL A. SARRO, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, these items:

H-2. All accounts in Petitioner's name, including the following debts, charges, liabilities, and obligations:

1. Capital One Visa
2. Capital One Visa
3. Providian Visa Classic
4. Alice Sarro
5. Sears (Respondent's account to be closed immediately, Husband responsible for balance only through 4/98)

H-3. Any and all debts, charges, liabilities, and other obligations incurred solely by the husband from and after March 10, 1998 unless express provision is made in this decree to the contrary.

H-4. All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the personal property awarded to the husband in this decree unless express provision is made in this decree to the contrary.

H-5 ——

Debts to Wife.

IT IS ORDERED AND DECREED that the wife, JOYCE ANN SARRO, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the husband and his property harmless from any failure to so discharge, these items:

W-1. The balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by Michael A. Sarro in the original principal sum of $91,718.00, dated March 20, 1996, payable to Old Kent Mortgage Company, and secured by deed of trust on the real property awarded in this decree to the husband and wife, which is recorded in a certain

W-6. the 1985 Toyota Pickup Truck together with all prepaid insurance, keys and title,

Page -23-

H-5. the balance due, including principal, interest, and all other charges, on the promissory note payable to AmeriCredit and given as part of the purchase price of and secured by a lien on the 1993 Acura Vigor motor vehicle awarded to the husband

numbered volume and page of the Deed of Trust Records of Bexar County, Texas.

W-3. All accounts in Respondent's name, including the following debts, charges, liabilities, and obligations:

1. Circuit City
2. Spiegal
3. Best Bank/Visa
4. J C Penneys
5. Mervyns
6. Bealls
7. Best Buy
8. Conns
9. Dillards
10. Levitz
11. Lacks

W-4. Any and all debts, charges, liabilities, and other obligations incurred solely by the wife from and after March 10, 1998 unless express provision is made in this decree to the contrary.

W-5. All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to the wife in this decree unless express provision is made in this decree to the contrary.

W-6. ~~_____~~ Notice.

IT IS ORDERED AND DECREED that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

**Provisions Dealing with Sale of Certain Personal Property**

IT IS FURTHER ORDERED AND DECREED that certain items of personal property, those being the Michael Howard chest of drawers with mirror, armoir with chest of drawers, whole headboard with drawers and queen size bed (not Grandmother's bed) currently in the possession of Petitioner and Respondent, shall be sold under the following terms and conditions:

1. The parties shall advertise the property in the San Antonio Express-News, with each party paying 50% of the advertising costs immediately and directly to the newspaper prior to commencement of advertisement; such advertisement shall be requested and paid for within 10 days of the signing of the decree.

W-6. The balance due, including principal, interest and all other charges, on the promissory note payable to Michael Engelke ~~and Bank of America,~~ and given as part of the purchase price of and secured by lien on the 1985 Toyota Pickup Truck motor vehicle awarded to the wife.

Page -24-

2.     The property shall be sold for a price that is mutually agreeable to Petitioner and Respondent.

3.     Petitioner shall make the property available for inspection, at a reasonable time and date, for prospective buyers.

4.     Petitioner shall have possession, custody and control of the property until closing. All maintenance and repairs necessary to keep the property in its present condition shall be paid by Petitioner.

5.     At closing, the Respondent shall be entitled to receive fifty percent (50%) of the net sales proceeds, after payment of selling and transportation costs and sales taxes, and Petitioner shall be entitled to receive fifty percent (50%) of the net sales proceeds, after payment of selling and transportation costs and sales taxes.

## Provisions Dealing with Sale of Residence

IT IS FURTHER ORDERED AND DECREED that unless otherwise ordered herein, upon the child attaining the age of eighteen years and otherwise emancipated, the property and all improvements located thereon at lot 16, block 1, New City Block 19148, Guilbeau Park subdivision, section/unit 4, according to the map, plat, or deed records of San Antonio, Bexar County, Texas, and more commonly known as 8839 Roquefort, San Antonio, Bexar County, Texas, shall be sold under the following terms and conditions:

1.     The parties shall list the property with a duly licensed real estate broker having sales experience in the area where the property is located, provided further that the real estate broker shall be an active member in the Multiple Listing Service with the San Antonio Board of Realtors.

2.     The property shall be sold for a price that is mutually agreeable to Petitioner and Respondent. If no agreement is reached within 30 days, the court retains jurisdiction to enter any further orders, as is necessary.

3.     Respondent shall continue to make all payments of principal, interest, taxes, and insurance on the property after the entry of the decree and during the pendency of the sale, and Respondent shall have the exclusive right to enjoy the use and possession of the premises until closing. All maintenance and repairs necessary to keep the property in its present condition shall be paid by Respondent.

4     At closing, the Respondent shall be entitled to receive seventy-percent percent (75%) of the net sales proceeds, after payment of closing costs and remaining encumbrance owed to Old Kent Mortgage Company (or its successors or assigns), and Petitioner shall be entitled to

receive twenty-five percent (25%) of the net sales proceeds, after payment of closing costs and remaining encumbrance owed to Old Kent Mortgage Company (or its successors or assigns).

5. The real property shall not be used to secure any home equity mortgages prior to the sale.

6. After July 17, 2002 but prior to the child is otherwise emancipated or by order of the court, the parties may mutually agree to sell the house under the provisions provided in subparagraphs (1) - (5) above.

7. If Respondent secures refinancing in her name only, on or before July 17, 2002, no net sales proceeds shall be divided between the parties.

Attorney's Fees.

To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the child, each party shall be responsible for his or her own attorney's fees incurred as a result of legal representation in this case.

Confirmation of Separate Property.

IT IS ORDERED AND DECREED that the following described property is confirmed as the separate property of MICHAEL A. SARRO: any and all of Petitioner's interest in retirement plan and deferred compensation plan on or before 06/05/93.

IT IS ORDERED AND DECREED that the following described property is confirmed as the separate property of JOYCE ANN SARRO: Personal injury lawsuit against Gunn-Acura; however, Respondent is responsible for payment of all related medical expenses.

Reformation of Court ruling concerning vehicles.

The Court finds that JOYCE ANN SARRO, refused to deliver the 1993 Acura in a timely manner, thereby causing the creditor AmeriCredit to repossess the 1993 Acura, previously awarded to MICHAEL A. SARRO. The Court finds that, in equity, the following realigned awards of property and payments of debts are ORDERED and DECREED:

MICHAEL A. SARRO is awarded the 1985 Toyota Pick Up Truck together with all prepaid insurance, keys, and title documents.

JOYCE ANN SARRO is awarded the 1993 Acura, or any rights related to it, together with all prepaid insurance, keys, and title documents.

IT IS ORDERED AND DECREED that JOYCE ANN SARRO, shall pay as a part of the division of the estate of the parties, and shall indemnify and hold the husband and his property harmless from any failure to so discharge, the balance due, including principal, interest, and all

Page -26-

other charges, on the promissory note payable to AmeriCredit and given as part of the purchase price of and secured by a lien on the 1992 Acura Vigor motor vehicle awarded to the wife, as herein reformed.

IT IS ORDERED AND DECREED that MICHAEL A. SARRO, shall pay as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, the balance due, including principal, interest, and all other charges, on the promissory note payable to Michael Engelke and given as part of the purchase price of and secured by lien on the 1985 Toyota Pick Up Truck and awarded to the husband.

IT IS ORDERED AND DECREED that because of JOYCE ANN SARRO'S inequitable acts, MICHAEL A. SARRO is awarded $_____ in attorney's fees, payable to MICHAEL A. SARRO on or within 10 days of the signing and entry of this Final Decree.

10. Transfer and Delivery of Property.

MICHAEL A. SARRO is ORDERED to appear in the law offices of Pedro V. Hernandez, Jr. at 301 So. Main Ave., San Antonio, TX 78204, at 10:00 a.m. on _August 26_, 1998, and to execute, have acknowledged, and deliver to Pedro V. Hernandez, Jr. these instruments:

1. Power of attorney to transfer motor vehicle.

MICHAEL A. SARRO is ORDERED to appear in the law offices of PEDRO V. HERNANDEZ, JR. at 301 So. Main Ave., San Antonio, TX 78204, at 10:00 a.m. on July 31, 1998, and to execute, have acknowledged, and deliver to PEDRO V. HERNANDEZ, JR. these instruments:

1. Certificate of title to motor vehicle; and

2. Power of attorney to transfer motor vehicle.

This decree shall serve as a muniment of title to transfer ownership of all property awarded to any party in this final decree of divorce.

Direction to Deliver Property.

MICHAEL A. SARRO is ORDERED to deliver to JOYCE ANN SARRO on _Aug 21_, 1998 at ~~10:00~~ 6:00 P.M. a.m. at 301 So. Main Ave., San Antonio, TX 78204 these items:

1. All tax statements, house papers, payment book and keys in his possession, custody or control, for property located at 8839 Roquefort, San Antonio, Texas 78250.

JOYCE ANN SARRO is ORDERED to deliver to MICHAEL A. SARRO on _Aug 26_, 1998 at ~~10:00~~ 6:00 P.M. a.m. at 301 So. Main Ave., San Antonio, TX 78204 these items:

1. All legal papers pertaining to the vehicle awarded to husband, a power of attorney,

Page -27-

together with all keys, insurance policies, registration papers, and title documents.

2. Other items to be picked up by MICHAEL A. SARRO at 8839 Roquefort, San Antonio, TX on _Aug 26, 1998_, 1998 at _6:00_ _P_. m.: Indian picture, three (3) Boston acoustic speakers, two (2) black speaker stands, wheel barrow, Via bench, and BBQ pit.

11. Court Costs.

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

12. Obligation under Temporary Orders.

IT IS ORDERED AND DECREED that Petitioner and Respondent are discharged from all further liabilities and obligations imposed by the temporary order of this Court rendered on June 15, 1998.

13. Clarifying Orders.

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

14. Relief Not Granted.

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied.

15. Date of Judgment.

This divorce judicially PRONOUNCED AND RENDERED in court at San Antonio, Bexar County, Texas, on July 17, 1998 and further noted on the court's docket sheet on the same date, but signed on _AUG 20 1998_, 1998.

_____
JUDGE PRESIDING    JUDGE JAMES E. BARLOW
                   SENIOR DISTRICT JUDGE
                   SITTING BY ASSIGNMENT

3. JOYCE ANN SARRO is ORDERED to deliver the 1993 Acura Vigor to MICHAEL A. SARRO at 301 So. Main Ave., San Antonio, TX on August 26, 1998 at 6:00 P.M.

4. MICHAEL A SARRO is ORDERED to deliver the 1985 Toyota Pickup Truck to JOYCE ANN SARRO at 301 So. Main Ave., San Antonio, TX on August 26, 1998 at 6:00 P.M.

Page -28-

APPROVED AS TO FORM ONLY:
PEDRO V. HERNANDEZ, JR.
301 SO. MAIN AVE.
SAN ANTONIO, TX 78204
TELEPHONE NO.: (210) 224-1111
FACSIMILE NO.: (210) 223-8817

By: _____

PEDRO V. HERNANDEZ, JR.
Attorney for Petitioner
State Bar No. 09519925

ABEL A. DOMINGUEZ
802 SO. ST. MARY'S ST.
SAN ANTONIO, TX 78205
TELEPHONE NO.: (210) 225-2900
FACSIMILE NO.: (210) 225-8585

By: _____

ABEL A. DOMINGUEZ
Attorney for Respondent
State Bar No. 05963700

_____

MICHAEL A. SARRO, Petitioner

_____

JOYCE ANN SARRO, Respondent

Page -29-

**Appendix D**

## NO. 98-CI-03821

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| MICHAEL A. SARRO | § | |
| AND | § | 73RD JUDICIAL DISTRICT |
| JOYCE ANN SARRO | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| MICHAEL ANDREW SARRO, A | § | |
| CHILD | § | BEXAR COUNTY, TEXAS |

## ORDER ON MOTION FOR NEW TRIAL

On October 23, 1998 the Court heard the Motion for New Trial of JOYCE ANN SARRO.

IT IS ORDERED that the motion is ~~DENIED~~. *GRANTED as to property issues only.*

SIGNED on ___Oct 23, 1998___.

_____
JUDGE PRESIDING

*approved as to form:*



# Appendix E

*5 min*

# JUDGE'S NOTES


1998CI03821_P00155

CAUSE NO.: 1998CI03821        COURT: 073        DATE/TIME: 04/04/2014 09:00AM
                             SETTING COURT: 109

STYLE: MICHAEL ALBERT SARRO
VS. JOYCE ANN SARRO

DISCOVERY LEVEL: 0

ATTORNEY(S) FOR CASE:
ABEL DOMINGUEZ                        JOHN MEAD
RONALD PRINCE                         WAYNENE COMBEST
JOYCE SARRO                           MICHAEL SARRO
RACHEL SADOVSKY

Maria E. Fattahi, Auxiliary Official Court Reporter
Telephone: 210-335-1594
Email: maria.fattahi@bexar.org

FILED
DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY
14 APR -4 AM 10: 32
BY _____ DEPUTY

TYPE OF MOTION OR APPLICATION:
  NON-JURY SETTING ON M/T SIGN TEMPORARY ORDERS                    JAM

CONFERRING_____ ESTIMATE HEARING TIME_____
AGREED ORDER_____ ASSIGNED COURT_____
DROP_____ RECORD TAKEN_____✓_____
INTERPRETER_____ RESET DATE_____ TIME_____

DATE OF NOTES *April 4 2014*                     JUDGE INITIALS *RW*

*Brief due by May 2, 2014*
*Response due by May 13, 2014*

┌─────────────────────────┐
│ **Document**            │
│ scanned as filed.       │
└─────────────────────────┘

PROPERTY OF BEXAR COUNTY DISTRICT CLERK'S OFFICE          (DK510A)

# Appendix F



1998CI03821 -P00159

# THE DISTRICT COURTS OF BEXAR COUNTY



BEXAR COUNTY COURTHOUSE
100 DOLOROSA
SAN ANTONIO, TEXAS 78205

August 8, 2014

**VIA FAX (210) 281-1845**
Mr. John Mead
Attorney At Law
310 S. St. Mary's, Ste. 1470
San Antonio, Texas 78205

**VIA FAX (210) 812-3401**
Ms. Rachel S. Sadovsky
Cordell & Cordell, P.C.
10101 Reunion Place, Ste. 250
San Antonio, Texas 78216

RE: Cause No. 1998-CI-03821
In the Interest of Michael Andrew Sarro, A Child
Filed in the 73rd District Court

Dear Mr. Mead and Ms. Sadovsky:

Judge Tanner has requested that I advise you of her ruling on the Motion to Confirm Final Decree of Divorce filed in this cause. The Motion is denied. As a trial court cannot sever property issues from a divorce action, once the new trial was granted that made the 1998 divorce decree interlocutory. The date of the divorce is August 17, 2004 which is the date that Judge Nellermoe heard the "final trial on merits of property issue" and reconfirmed all other terms of the decree. Judge Tanner requests that Mr. Mead prepare a Final Decree of Divorce which indicates the August 17, 2004 date as the date of hearing and submit the decree to Ms. Sadovsky for approval as to form.

Very truly yours,

Dinah Gaines
Staff Attorney
Bexar County Civil District Courts

DG/

DOCUMENT SCANNED AS FILED

# Appendix G

(1) Time for Request. At any time before the clerk's record is prepared, any party may file with the trial court clerk a written designation specifying items to be included in the record.

(2) Request Must be Specific. A party requesting that an item be included in the clerk's record must specifically describe the item so that the clerk can readily identify it. The clerk will disregard a general designation, such as one for "all papers filed in the case."

(3) Requesting Unnecessary Items. In a civil case, if a party requests that more items than necessary be included in the clerk's record or any supplement, the appellate court may — regardless of the appeal's outcome — require that party to pay the costs for the preparation of the unnecessary portion.

(4) Failure to Timely Request. An appellate court must not refuse to file the clerk's record or a supplemental clerk's record because of a failure to timely request items to be included in the clerk's record.

(c) *Supplementation*.

(1) If a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or any party may by letter direct the trial court clerk to prepare, certify, and file in the appellate court a supplement containing the omitted item.

(2) If the appellate court in a criminal case orders the trial court to prepare and file findings of fact and conclusions of law as required by law, or certification of the defendant's right of appeal as required by these rules, the trial court clerk must prepare, certify, and file in the appellate court a supplemental clerk's record containing those findings and conclusions.

(3) Any supplemental clerk's record will be part of the appellate record.

(d) *Defects or Inaccuracies*. If the clerk's record is defective or inaccurate, the appellate clerk must inform the trial court clerk of the defect or inaccuracy and instruct the clerk to make the correction.

(e) *Clerk's Record Lost or Destroyed*. If a filing designated for inclusion in the clerk's record has been lost or destroyed, the parties may, by written stipulation, deliver a copy of that item to the trial court clerk for inclusion in the clerk's record or a supplement. If the parties cannot agree, the trial court must — on any party's motion or at the appellate court's request — determine what constitutes an accurate copy of the missing item and order it to be included in the clerk's record or a supplement.

(f) *Original Documents*. If the trial court determines that original documents filed with the trial court clerk should be inspected by the appellate court or sent to that court in lieu of copies, the trial court must make an order for the safekeeping, transportation, and return of those original documents. The order must list the original documents and briefly describe them. All the documents must be arranged in their listed sequence and bound firmly together. On any party's motion or its own initiative, the appellate court may direct the trial court clerk to send it any original document.

(g) *Additional Copies of Clerk's Record in Criminal Cases*. In a criminal case, the clerk's record must be made in duplicate, and in a case in which the death penalty was assessed, in triplicate. The trial court clerk must retain the copy or copies for the parties to use with the court's permission.

(h) *Clerk May Consult With Parties*. The clerk may consult with the parties concerning the contents of the clerk's record.

**34.6. Reporter's Record**

(a) *Contents*.

(1) Stenographic Recording. If the proceedings were stenographically recorded, the reporter's record consists of the court reporter's transcription of so much of the proceedings, and any of the exhibits, that the parties to the appeal designate.

(2) Electronic Recording. If the proceedings were electronically recorded, the reporter's record consists of certified copies of all tapes or other audio-storage devices on which the proceedings were recorded, any of the exhibits that the parties to the appeal designate, and certified copies of the logs prepared by the court recorder under Rule 13.2.

(b) *Request for preparation*.

(1) Request to Court Reporter. At or before the time for perfecting the appeal, the appellant must request in writing that the official reporter

prepare the reporter's record. The request must designate the exhibits to be included. A request to the court reporter — but not the court recorder — must also designate the portions of the proceedings to be included.

(2)   Filing. The appellant must file a copy of the request with the trial court clerk.

(3)   Failure to Timely Request. An appellate court must not refuse to file a reporter's record or a supplemental reporter's record because of a failure to timely request it.

(c)   *Partial Reporter's Record.*

(1)   Effect on Appellate Points or Issues. If the appellant requests a partial reporter's record, the appellant must include in the request a statement of the points or issues to be presented on appeal and will then be limited to those points or issues.

(2)   Other Parties May Designate Additions. Any other party may designate additional exhibits and portions of the testimony to be included in the reporter's record.

(3)   Costs; Requesting Unnecessary Matter. Additions requested by another party must be included in the reporter's record at the appellant's cost. But if the trial court finds that all or part of the designated additions are unnecessary to the appeal, the trial court may order the other party to pay the costs for the preparation of the unnecessary additions. This paragraph does not affect the appellate court's power to tax costs differently.

(4)   Presumptions. The appellate court must presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues. This presumption applies even if the statement includes a point or issue complaining of the legal or factual insufficiency of the evidence to support a specific factual finding identified in that point or issue.

(5)   Criminal Cases. In a criminal case, if the statement contains a point complaining that the evidence is insufficient to support a finding of guilt, the record must include all the evidence admitted at the trial on the issue of guilt or innocence and punishment.

(d)   *Supplementation.* If anything relevant is omitted from the reporter's record, the trial court, the appellate court, or any party may by letter direct the official court reporter to prepare, certify, and file in the appellate court a supplemental reporter's record containing the omitted items. Any supplemental reporter's record is part of the appellate record.

(e)   *Inaccuracies in the Reporter's Record.*

(1)   Correction of Inaccuracies by Agreement. The parties may agree to correct an inaccuracy in the reporter's record, including an exhibit, without the court reporter's recertification.

(2)   Correction of Inaccuracies by Trial Court. If the parties cannot agree on whether or how to correct the reporter's record so that the text accurately discloses what occurred in the trial court and the exhibits are accurate, the trial court must – after notice and hearing – settle the dispute. If the court finds any inaccuracy, it must order the court reporter to conform the reporter's record (including text and any exhibits) to what occurred in the trial court, and to file certified corrections in the appellate court.

(3)   Correction After Filing in Appellate Court. If the dispute arises after the reporter's record has been filed in the appellate court, that court may submit the dispute to the trial court for resolution. The trial court must then proceed as under subparagraph (e)(2).

(f)   *Reporter's Record Lost or Destroyed.* An appellant is entitled to a new trial under the following circumstances:

(1)   if the appellant has timely requested a reporter's record;

(2)   if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or – if the proceedings were electronically recorded – a significant portion of the recording has been lost or destroyed or is inaudible;

(3)   if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, is necessary to the appeal's resolution; and

(4)   if the lost, destroyed or inaudible portion of the reporter's record cannot be replaced by

41

agreement of the parties, or the lost or destroyed exhibit cannot be replaced either by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit.

(g) *Original Exhibits.*

(1) Reporter May Use in Preparing Reporter's Record. At the court reporter's request, the trial court clerk must give all original exhibits to the reporter for use in preparing the reporter's record. Unless ordered to include original exhibits in the reporter's record, the court reporter must return the original exhibits to the clerk after copying them for inclusion in the reporter's record. If someone other than the trial court clerk possesses an original exhibit, either the trial court or the appellate court may order that person to deliver the exhibit to the trial court clerk.

(2) Use of Original Exhibits by Appellate Court. If the trial court determines that original exhibits should be inspected by the appellate court or sent to that court in lieu of copies, the trial court must make an order for the safekeeping, transportation, and return of those exhibits. The order must list the exhibits and briefly describe them. To the extent practicable, all the exhibits must be arranged in their listed order and bound firmly together before being sent to the appellate clerk. On any party's motion or its own initiative, the appellate court may direct the trial court clerk to send it any original exhibit.

(h) *Additional Copies of Reporter's Record in Criminal Cases.* In a criminal case in which a party requests a reporter's record, the court reporter must prepare a duplicate of the reporter's record and file it with the trial court clerk. In a case where the death penalty was assessed, the court reporter must prepare two duplicates of the reporter's record.

(i) *Supreme Court and Court of Criminal Appeals May Set Fee.* From time to time, the Supreme Court and the Court of Criminal Appeals may set the fee that the court reporters may charge for preparing the reporter's record.

### Notes and Comments

Comment to 1997 change: Former Rules 50, 51 and 53 are merged. *Clerk's record* is substituted for *transcript*, and *reporter's record* is substituted for *statement of facts* throughout the rules. In subdivision 34.2, the requisites of an agreed record are more clearly stated. Former Rule 50(d), regarding the burden to file a complete record, is repealed. Subdivision 34.4 is from former Rules 51(c) and 53(h). Former Rule 50(f), regarding a violation of the rules, is repealed. Subparagraph 34.5(b)(3) allows the appellate court to tax costs against a party for requiring unnecessary items to be included in the clerk's record. Paragraph 34.5(c) is new and provides for supplementation of the clerk's record. The provisions of paragraph 34.5(d) are from former Rule 55(b). The provisions of paragraph 34.5(e) are from former Rule 50(e). Paragraph 34.5(h) specifically allows the clerk to consult with the parties to determine the contents of the clerk's record. Paragraph 34.6(a), defining the reporter's record, is new. Former Rules 53(b) (Other Requests), (d) (Partial Statement), and (e) (Unnecessary Portions) are merged into paragraph 34.6(c). Paragraph 34.6(d) is new. Paragraph 34.6(e) is from former Rule 55. Paragraph 34.6(f) is from former Rule 50(d). The provisions of former Rules 53(f) (Certification by Court Reporter) and (h) (Form) are moved to the Order of the Supreme Court and the Court of Criminal Appeals on the preparation of the record. Former Rule 53(I) (Narrative Statement) is repealed. The provisions of former Rule 53(j) (Free Statement of Facts) are moved to Rule 20. Former Rule 53(k) (Duty of Appellant to File) is repealed; it is now the duty of the court reporter to file the reporter's record. Paragraph 34.6(g) is from former Rule 51(d). Former Rule 53(g) is now paragraph 34.6(I). Former Rule 53(l) is now paragraph 34.6(h). The need for two duplicate records in a death penalty case was created by the habeas corpus provision in Code of Criminal Procedure article 11.071.

Comment to 2002 change: Rule 34.5(a) is amended to require that the record in a criminal case include the certification of defendant's right of appeal; see Rule 25.2(d). Rule 34.5(c) is amended to make clear that an appellate court may order the trial court to make such a certification for inclusion in a supplemental clerk's record. Subparagraphs 34.6(e) and (f) are amended to clarify the application to exhibits. The language in subparagraph (e)(2) referring to the text of the record is simplified without substantive change. Subparagraph (e)(3) incorporates the procedures specified in (e)(2). The language in subparagraph (f) is clarified to require agreement only as to the portion of the text at issue, and to provide that the trial court may determine that a copy of an exhibit should be used even if the parties cannot agree.

### Rule 35. Time to File Record; Responsibility for Filing Record

**35.1. Civil Cases**

The appellate record must be filed in the appellate court within 60 days after the judgment is signed, except as follows:

(a) if Rule 26.1(a) applies, within 120 days after the judgment is signed;